# Commonwealth *v.* Karamarkovic, Appellant.

*Appeals—Assignments of error—Trivial assignments—Criminal cases.*

The multiplication of assignments of error upon trivial points having no substantial bearing on the merits of the issue, is always injurious to an appellant's case, by their inevitable suggestion that the record has been hunted over less to discover real error or injustice than to pick a flaw on which to hang an objection. Assignments of error in criminal cases are particularly open to this inference.

*Criminal law—Murder—Evidence—Expert—Opinion.*

Where on a trial of an indictment for murder it is shown that the prisoner when arrested was wearing a hat which belonged to the murdered man, a doctor who has examined both may express an opinion that the location of certain cuts in the hat corresponded to cuts on the head of the murdered man.

Where a knife is offered in evidence, and it is shown that it was found at the exact spot where the prisoner was arrested, and it also appears that the murder was committed with a knife, the connection of the knife with the crime is for the jury.

Where several objects are offered in evidence and objection is made to the offer as a whole, and certain of the objects are properly admissible, there is no error in overruling the objection.

Circumstantial evidence is always admissible on the trial of an indictment for murder, whether there were eyewitnesses of the crime, or not.

On the trial of an indictment for murder, the district attorney is not bound to call as a witness everybody that anybody else may think desirable. The responsibility is upon him, and a large measure of discretion must be allowed him in meeting it. While he should try the case fairly in all respects, yet he is the commonwealth's officer with a duty to take the commonwealth's view, and present it with zeal.

Where there is nothing to show that the commonwealth knew anything about an alleged eyewitness until another witness went on the stand, and no objection is made at the trial because of the nonproduction of the eyewitness, an assignment of error based upon the nonproduction of such witness will not be sustained.

Argued May 6, 1907.    Appeal, No. 80, Oct. T., 1907, by defendant, from judgment of O. & T. Cambria Co., Dec. T., 1905, No. 7, on verdict of guilty of murder of the first degree in case of Commonwealth v. Marko Karamarkovic.    Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ.    Affirmed.

Indictment for murder.    Before O'CONNOR, P. J.

The opinion of the Supreme Court states the case.

Verdict of guilty of murder of the first degree upon which sentence was passed.

*Errors assigned* were various rulings and instructions sufficiently set forth in the opinion of the Supreme Court.

*Walter Jones* and *M. B. Stephens*, for appellant.

*J. W. Leech* and *D. P. Weimer*, for the appellee.

OPINION BY MR. CHIEF JUSTICE MITCHELL, May 20, 1907:

Counsel seem to be slow in learning that the multiplication of assignments of error upon trivial points, having no substantial bearing on the merits of the issue, are always injurious to an appellant's case by their inevitable suggestion that the record has been hunted over less to discover real error or injustice than to pick a flaw on which to hang an objection. Assignments of error in criminal cases are particularly open to this inference.

In this case the fact that the deceased was killed by stab wounds under circumstances that made it murder was undisputed, and the defense was an alibi.    The only issue, therefore, was whether the prisoner was the man who did the killing, and, if so, the degree of the crime.    The case was submitted to the jury in a full and careful charge covering all the matters open to doubt.    Of the seventeen assignments of error,

mostly hypercritical objections to the charge, only a few need be specially referred to.

The deceased and a friend were nearing their home shortly after dark on a November evening, when a man rushed across the street or out of an alley, stabbed them both and then ran up the alley. There was no preliminary quarrel, and no motive appeared except the suggestion of racial antipathy, all the parties being foreigners. The deceased, Homa, helped his friend into the house and then returned for their hats which had been lost in the attack. He picked up his friend's hat and another which, on bringing into the house, he found was not his. Between the attack and Homa's return to search for the hats, a man was seen striking matches in the alley, picking up a hat and running away. There was testimony tending to identify this man as the prisoner, and when the latter was arrested in the neighborhood an hour or so later, he was wearing a hat testified to be that of Homa, the murdered man. This was the most important single item in the chain of evidence, and has been fully recited to show the bearing of the testimony which is the subject of the first assignment of error. When the physician, who attended Homa at the hospital, was on the stand, he was asked if the cuts on Homa's head and neck would be about the location of the cuts in the hat worn by the prisoner when arrested. He answered, very carefully and guardedly, " A. Well, it would depend altogether on how the hat was worn at the time. I, in examining the hat, could readily see how, if the hat was down over the side of the head, somewhat in this manner (illustrates same) and the knife jammed in through this cut, that it could make the cut behind the left ear as he had it. But the hat would have to be down over the back of his head somewhat like that (again illustrates same) to do it. Evidently a cut or stab done in that way would make the cut, provided the hat was in the position I speak of, in my judgment." This was objected to and is now argued against as a mere opinion and a conclusion from it which was not for the witness but for the jury to draw. Even as an opinion, however, it was clearly admissible, for the witness had special knowledge and means of comparison. The jury had the hat before them, but they did not have the dead man's head, and the correspondence of the cuts on both re-

quired an exactness of knowledge that could not be conveyed by a mere separate description of each.

But it was more than an opinion, it was testimony to a very material fact bearing on the identification of the prisoner with the murderer.

The second assignment is to the admission in evidence of a knife, two hats and some other articles. The knife was found in the alley shortly after the prisoner's arrest, and at the exact spot where the arrest had taken place. Its connection with the crime was for the jury. The hats were clearly identified as parts of the res gestæ. As to the other articles there was testimony tending to show connection and it was largely a matter within the judge's discretion, and even if that was not well exercised, the objection was made to the offer as a whole and the knife and hats being certainly admissible, the objection was properly overruled.

The third assignment is to the admission of " circumstantial evidence, and submitting it to the jury when there was an eyewitness known to the commonwealth not produced, and no effort made by the commonwealth to obtain the testimony or find the witness." This is much too broad. Circumstantial evidence is always admissible whether there are eyewitnesses or not. But the latter part of the assignment that the case was submitted to the jury on circumstantial evidence alone when there was an eyewitness known to the commonwealth, not produced, and not accounted for, involves a very serious charge which should not be lightly made and which in this case appears to have no foundation. It is settled law in Pennsylvania that the commonwealth is not a vindictive seeker for vengeance and the prosecuting officer is so far bound to a judicial attitude, that he should present to the jury substantially all the evidence within his reach that may throw important light on the case. This, however, does not mean that he must call as a witness everybody that anybody else may think desirable. The responsibility is upon him and a large measure of discretion must be allowed him in meeting it. While he should try the case fairly in all respects yet he is the commonwealth's officer with a duty to take the commonwealth's view and to press it even with zeal: Com. v. Nicely, 130 Pa. 261; Com. v. Bubnis, 197 Pa. 542.

The sole reference by the appellant to sustain this assignment is to the testimony of a witness Forgacs, who said that at the hospital, Donich, the other man who was killed, told him that Homa was walking with one man and he with another. " Q. Did he say who this fellow was that was walking with him? A. He said another man; he didn't mention the name, but said that John Homa went with the one man and he was going along with the other man. Q. Did you make an effort to find out who the other man was? A. No, sir; one man is here; only one man missing, because one is dead. Q. You didn't get that man? A. No, sir; he is away; he is a Hungarian, and he went away the next day. Q. Where to? A. Toward Windber. Q. Why didn't you go after him? A. I didn't think it was necessary." The only connection this witness appears to have had with the case was his use as an interpreter during the preliminary investigations. There was nothing to show that the commonwealth knew anything about the alleged escaping witness, until Forgacs went on the stand, and as this point was not made at the trial, the commonwealth was not bound to take any notice of it.

The remaining assignments are to separated quotations from the charge and do not require discussion.

The judgment is affirmed and the record remitted for purpose of execution.