405 A.2d 881

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Howard James KLOBUCHIR, Appellant.**

Supreme Court of Pennsylvania.

June 6, 1979.

Reargument Denied Sept. 26, 1979.

242

Michael M. Mullen, Jr., Michael W. Zurat, Mullen & Zurat, Pittsburgh, for appellant.

Robert E. Colville, Dist. Atty.; Robert L. Eberhardt, Charles W. Johns, K. Alexander Mericli, Asst. Dist. Attys., Pittsburgh, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, MANDERINO and LARSEN, JJ.

## ORDER

PER CURIAM.

The Court being equally divided, the order of the Court of Common Pleas of Allegheny County is hereby affirmed.

NIX, J., filed an Opinion in Support of Affirmance in which O'BRIEN and LARSEN, JJ., joined.

EAGEN, C. J., filed an Opinion in Support of Reversal.

ROBERTS, J., filed an Opinion in Support of Reversal and Remand for Trial on Charges not to Exceed Murder of the Third Degree.

MANDERINO, J., filed an Opinion in Support of Reversal.

## OPINION IN SUPPORT OF AFFIRMANCE

NIX, Justice.

The single issue presented in this appeal is whether the Commonwealth may now try appellant on a first degree murder charge, after a Post Conviction Hearing Court vacated judgments of sentence entered on appellant's earlier negotiated plea of guilty to third degree murder and aggravated assault and awarded appellant a new trial. The procedural posture, necessary for a full understanding of the question, may be summarized as follows. Appellant, Howard Klobuchir, was indicted on charges of murder and voluntary manslaughter with regard to the death of Richard Bates. He was also charged with aggravated assault and recklessly endangering another person with reference to conduct involving his wife, Bertha Klobuchir. After indictments were returned on the above complaints, appellant and

his counsel entered into plea negotiations with the prosecutor, the result of which was an agreement whereby appellant would plead guilty to murder of the third degree and aggravated assault in return for which the Commonwealth would not seek a conviction of a higher degree of homicide and would move to dismiss the other charges. On March 10, 1976 after a recorded colloquy, the trial court accepted the terms of the agreement, dismissed the latter two charges, and sentenced appellant to ten to twenty years imprisonment on the murder charge and five to ten years imprisonment on the aggravated assault offense. Appellant took no direct appeal from these judgments of sentence.

On November 14, 1977, appellant sought relief under the Post Conviction Hearing Act (PCHA), 19 P.S. § 1180–1 *et seq.* (Supp.1978–79), challenging, inter alia, the validity of his guilty pleas. After a hearing, the PCHA court, on January 17, 1978, granted appellant a "new trial", or more accurately, the right to plead anew and demand trial by jury.[1] Trial on the original indictments was originally scheduled for April 3, 1978 but was re-scheduled for September 5, 1978 at appellant's request. On September 5, 1978, appellant filed a pre-trial application, under Pennsylvania Rule of Criminal Procedure 306, asserting that the double jeopardy provisions of the federal and state constitutions prohibit the Commonwealth from trying appellant on any homicide charge higher than third degree murder, the charge to which appellant originally pleaded guilty.[2] Although captioned as an "Application to Dismiss", appellant's

1. The PCHA court's order did not state the specific grounds which compelled it to invalidate appellant's guilty pleas. However, the Commonwealth avers, and our independent review reveals, that the guilty plea colloquy failed to inform appellant of the presumption of innocence. *See Commonwealth v. Willis*, 471 Pa. 50, 369 A.2d 1189 (1977).

2. Appellant's pre-trial application stated:
Your Petitioner through his attorneys respectfully contends that he can not be tried for any crime greater than that of Third Degree Murder since any attempt to try him for a crime greater than the one that he pled to constitutes double jeopardy under both the Constitution and case law of the United States and that of the Commonwealth of Pennsylvania.

pre-trial motion in effect sought a ruling that appellant could be tried only for third degree murder. Such a ruling would bar prosecution for murder of the first degree under the indictment. After a hearing and the submission of memoranda of law by both parties, the trial court denied appellant's application on November 8, 1978. Appellant appealed to this Court from that denial.[3] For the following reasons, we affirm that denial.

In this Court, appellant advances three grounds for relief: (1) The double jeopardy protection embodied in both the Pennsylvania and United States Constitutions, Pa.Const., art. I, § 10 and U.S.Const. amend. V, prohibit the Commonwealth from trying appellant on any homicide charge higher than third degree murder; (2) federal due process require- ments prohibit the Commonwealth from trying appellant on any homicide charge higher than third degree murder; and (3) the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution bars the Commonwealth from trying appellant on any homicide charge higher than third degree murder.

## I. ISSUES NOT PRESERVED.

The Commonwealth argues vigorously that appellant's latter two contentions are not properly before this Court. We agree.

There seems to be little question that double jeopardy, due process, and equal protection are historically and analytically distinct areas of constitutional concern.[4] See North Carolina

---

**3.** The instant interlocutory appeal is being entertained pursuant to *Commonwealth v. Hogan,* 482 Pa. 333, 393 A.2d 1133 (1978); *Commonwealth v. Bolden,* 472 Pa. 602, 373 A.2d 90 (1977). We note that appellant executed a written waiver of his right to a prompt trial under Pennsylvania Rule of Criminal Procedure 1100.

**4.** Mr. Justice Roberts' dissent in *Commonwealth v. Henderson,* 482 Pa. 359, 374, 393 A.2d 1146, 1154 (1978) (Roberts, J., dissenting), does not appear to quarrel with this proposition. Rather, in *Henderson* Mr. Justice Roberts disputed the Court's application of Pennsylvania Rule of Appellate Procedure 1115(a)(e) to Henderson's statement of questions in her petition for allowance of appeal. *Id.,* 482 Pa. at 375, 393 A.2d at 1154 (Roberts, J., dissenting). The appellate

*v. Pearce*, 395 U.S. 711, 719, 722, 723, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969); *Commonwealth v. Henderson*, 482 Pa. 359, 365 and nn. 2 and 3, 393 A.2d 1146, 1149 and nn. 2 and 3 (1978); Comment, The Constitutionality of Reindicting Successful Plea Bargain Appellants on the Original, Higher Charges, 62 Calif.L.Rev. 258, 259 and n.8 (1974). *See also* J. A. Sigler, Double Jeopardy: The Development of a Legal and Social Policy 4, 8–10 (1969). Appellant has submitted to this Court three separate grounds for relief, two of which, due process and equal protection, were not addressed by the parties or the court below. Pennsylvania Rule of Criminal Procedure 306, governing pre-trial motions, states in pertinent part:

> It [the motion] shall state specifically the grounds upon which each type of relief requested therein is based, setting forth for each type of relief requested the facts in consecutively numbered paragraphs, and shall specify each such type of relief requested.
>
> \* \* \* \* \* \*
>
> All grounds for the relief demanded shall be stated in the motion and failure to state a ground shall constitute a waiver thereof.
>
> Pa.R.Crim.P. 306(b), (e).

In the instant case, the sole ground for relief stated in appellant's motion was that of double jeopardy. *See* note 2 *supra*. Similarly, appellant's brief in the trial court in support of this motion focused exclusively on the double jeopardy question, and, understandably, the Commonwealth's brief in opposition below responded only to appellant's claim that the contemplated trial would unconstitutionally place him twice in jeopardy. Moreover, the trial court's opinion analyzed appellant's claim only in terms of the alleged double jeopardy violation.

 The appellate companion of Rule 306 is Pennsylvania Rule of Appellate Procedure 302(a), which states:

rules governing the contents of such petitions have no relevance to the instant appeal. *See* discussion *infra*.

Issues not raised in the lower court are waived and cannot be raised for the first time on appeal. Pa.R.A.P. 302(a).

This salutary and fundamental principle of appellate review has been applied time and again in cases where an appellant approaches this Court with a legal theory not presented to the court below. *See Kimmel v. Somerset County Commissioners,* 460 Pa. 381, 384, 333 A.2d 777, 779 (1975); *Commonwealth v. Mitchell,* 464 Pa. 117, 346 A.2d 48 (1975); *Commonwealth v. Branham,* 467 Pa. 605, 359 A.2d 766 (1976); *Commonwealth v. Pritchitt,* 468 Pa. 10, 359 A.2d 786 (1976). *See also* Pa.R.A.P. 2116(c), 2118(e). Because appellant deprived the trial court of the opportunity to consider the due process and equal protection grounds now raised in this Court, we hold that these issues are not properly before us.[5]

## II. *FEDERAL DOUBLE JEOPARDY*

A decade ago, the United States Supreme Court held that "the double jeopardy prohibition of the Fifth Amendment . . . [applies] to the States through the Fourteenth Amendment". *Benton v. Maryland,* 395 U.S. 784, 794–95, 89 S.Ct. 2056, 2062, 23 L.Ed.2d 707 (1969). More

5. We note further that even had these due process and equal protection claims been raised in the lower court, by considering them at this stage we might very well exceed the scope of the jurisdiction we assumed in reliance upon *Commonwealth v. Bolden, supra.* In *Bolden* this Court extended its appellate jurisdiction only to an appeal from the denial of defendant's pre-trial motion to dismiss an indictment on double jeopardy grounds. *Id.,* 472 Pa. at 610, 373 A.2d at 93. The rationale for our assumption of jurisdiction was that by compelling the defendant to proceed to judgment we might force him to forfeit the constitutional protection against being twice placed in jeopardy. *Id.,* 472 Pa. at 611–14, 373 A.2d at 94–95. In *Bolden* we did not assume jurisdiction in order to resolve any and all constitutional questions raised pre-trial by the appellant.

We also observe that because appellant stands unconvicted and unsentenced, the constitutionality of any enhanced sentence appellant might receive if convicted is a question not ripe for our review. To pass on such a question at this stage of the case would be tantamount to rendering an advisory opinion, which this Court has consistently refused to do. *See Mt. Lebanon v. County Bd. of Elections,* 470 Pa. 317, 368 A.2d 648 (1977); *Pennsylvania Public Utility Commission v. Allegheny Co.,* 415 Pa. 313, 203 A.2d 544 (1964); *Knup v. Philadelphia,* 386 Pa. 350, 126 A.2d 399 (1956).

recently, that Court held that federal rules governing the point at which jeopardy attaches are an integral part of the double jeopardy protection and, therefore, apply with equal force to state criminal proceedings. *Crist v. Bretz*, 437 U.S. 28, 37, 98 S.Ct. 2156, 2162, 57 L.Ed.2d 24 (1978). Because the Double Jeopardy Clause seeks, at least in part, to guarantee the defendant's "valued right to have his trial completed by a particular tribunal", *id.* at 36, 98 S.Ct. at 2161, *citing, inter alia, United States v. Martin Linen Supply Co.*, 430 U.S. 564, 97 S.Ct. 1349, 51 L.Ed.2d 642 (1977), the federal jeopardy attachment rules have been articulated by reference to certain events which clearly signal the beginning of trial on the cause. *Serfass v. United States*, 420 U.S. 377, 388, 95 S.Ct. 1055, 43 L.Ed.2d 265 (1975). In a jury trial, jeopardy attaches when a jury is empaneled and sworn, and in a bench trial, jeopardy attaches when the court begins to hear evidence. *Id.* at 388, 95 S.Ct. 1055. Thus, the prohibition of double jeopardy, as it relates to subsequent prosecutions, is simply irrelevant until jeopardy has once attached, that is, "until a defendant is 'put to trial before the trier of facts, whether the trier be a jury or a judge.' " *Id.* at 388, 95 S.Ct. at 1064, *quoting United States v. Jorn*, 400 U.S. 470, 479, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971). We can conceive of no reasonable extension of these settled constitutional principles which would lead us to conclude that the prosecution of appellant for first degree murder places him in jeopardy a second time for that charge. Although appellant was originally indicted[6] on a count which included first degree murder, the charge of first degree murder was never submitted to a trier of fact. Appellant's federal double jeopardy claim fails for the simple reason that he was never, in constitutional terms, placed once in jeopardy on the charge of first degree murder.[7] The most we can concede is that upon the

---

6. No jeopardy attaches upon return of an indictment. *See Bassing v. Cady*, 208 U.S. 386, 28 S.Ct. 392, 52 L.Ed. 540 (1908).

7. While this reasoning may suggest that subsequent prosecution for a higher degree of homicide may not be barred even where the plea to the lesser degree has not been set aside, we hasten to note that although the successive prosecution aspect of double jeopardy might

court's acceptance of appellant's guilty plea to third degree murder, jeopardy attached as to that offense.[8] *See United States v. Williams*, 534 F.2d 119, 120 (8th Cir.) (dictum), *cert. denied*, 429 U.S. 894, 97 S.Ct. 255, 50 L.Ed.2d 177 (1976). However, this concession does not alter our conclusion that appellant has yet to be placed once in jeopardy for murder of the first degree. *See* Note, 50 Notre Dame Law. 857, 869 (1975).

In pressing his federal double jeopardy claim , appellant would have us extend the holding of *Green v. United States*, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957). In *Green*, defendant was indicted and tried by a jury on charges of arson, first degree murder, and second degree murder. *Id.* at 184–85, 78 S.Ct. 221. The jury found him guilty of arson and second degree murder, no specific verdict being returned on the first degree murder count. *Id.* at 186, 78 S.Ct. 221. Green successfully appealed his second degree murder conviction and was awarded a new trial[9] at which he was tried and convicted again for first degree murder under the original indictment. *Id.* On appeal, the United States Supreme Court held that the "second trial for first degree murder placed Green in jeopardy twice for the same offense in violation of the Constitution". *Id.* at 190, 78 S.Ct. at 225.

not be offended by such a procedure, the guaranteed protection from multiple punishment for the same criminal conduct, i. e., the killing, would certainly bar the subsequent action. *See Commonwealth v. Hogan, supra*, 482 Pa. at 336, 393 A.2d at 1134, *citing United States v. Benz*, 282 U.S. 304, 51 S.Ct. 113, 75 L.Ed. 354 (1931) (multiple punishments). *See generally Green v. United States*, 355 U.S. 184, 191, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957) (dictum).

**8.** Appellant concedes, as he must, that the Double Jeopardy Clause does not prevent him from being reprosecuted for third degree murder. *See Burks v. United States*, 437 U.S. 1, 14, 98 C.St. 2141, 2149, 57 L.Ed.2d 1 (1978); *United States v. Tateo*, 377 U.S. 463, 465, 84 S.Ct. 1587, 12 L.Ed.2d 448 (1964); *United States v. Ball*, 163 U.S. 662, 16 S.Ct. 1192, 41 L.Ed. 300 (1896).

**9.** Because the appellate court in *Green* found the evidence insufficient to support the second degree murder conviction, the court's award of a new trial instead of a directed judgment of acquittal would be contrary to the Supreme Court's recent decision in *Burks v. United States, supra* note 8.

Although one could read *Green* broadly as support for the proposition that once a defendant is sentenced on a lesser related offense and that sentence is overturned he may not be prosecuted for the greater offense, such a reading ignores the express rationale underlying the *Green* holding. The Court explained its reasoning as follows:

Green was in direct peril of being convicted and punished for first degree murder at his first trial. He was forced to run the gantlet once on that charge and the jury refused to convict him. When given the choice between finding him guilty of either first or second degree murder it chose the latter. In this situation the great majority of cases in this country have regarded the jury's verdict as an implicit acquittal on the charge of first degree murder. But the result in this case need not rest alone on the assumption, which we believe legitimate, that the jury for one reason or another acquitted Green of murder in the first degree. For here, the jury was dismissed without returning any express verdict on that charge and without Green's consent. Yet it was given a full opportunity to return a verdict and no extraordinary circumstances appeared which prevented it from doing so. Therefore it seems clear, under established principles of former jeopardy that Green's jeopardy for first degree murder came to an end when the jury was discharged so that he could not be retried for that offense. *Wade v. Hunter*, 336 U.S. 684, 69 S.Ct. 834, 93 L.Ed. 974. In brief, we believe this case can be treated no differently, for purposes of former jeopardy, than if the jury had returned a verdict which expressly read: "We find the defendant not guilty of murder in the first degree but guilty of murder in the second degree."

*Id.* at 190–91, 78 S.Ct. at 225 (footnotes omitted).

Thus, the crucial factor in *Green* was that the first jury was given full opportunity to find defendant guilty of first degree murder. The jury's refusal to do so provided a logical basis for concluding that defendant was implicitly acquitted of that offense. This rationale was reaffirmed in

*Price v. Georgia,* 398 U.S. 323, 327–29, 90 S.Ct. 1757, 26 L.Ed.2d 300 (1970).

In the instant appeal, this factor is absent, because appellant pleaded guilty to the lesser offense of murder of the third degree. Consequently, no trier of fact, be it judge or jury, was presented with a choice between first degree and third degree murder in appellant's first prosecution. We are not persuaded that the trial judge's acceptance of appellant's plea of guilty to third degree murder can be interpreted as an implied rejection of criminal liability for first degree murder. Since the plea was a negotiated one, and the acceptance of the lesser degree of murder a term of the agreement, the court did not have the option of entering a finding of a higher degree of homicide upon the plea. If the court was dissatisfied with the terms of the bargain the plea would not have been accepted and the appellant would have had the option of proceeding to trial before a jury. *See* Pa.R.Crim.P. 319(b)(3). Nor does the fact that the court accepted the plea necessarily suggest an implicit conclusion that the evidence might not also support a higher degree of the crime of murder. There are many considerations that would justify the acceptance of a plea for a lesser degree than the evidence might support. Therefore, in the case before us, appellant was not placed in jeopardy of a finding of murder of the first degree by his entry of the negotiated plea to murder of the third degree, nor is there any legitimate basis for concluding that the court's acceptance of the plea should be construed as an acquittal of a higher degree of the offense. Thus the linchpin necessary to sustain a theory of double jeopardy based upon successive prosecutions is missing.

Although the United States Supreme Court has not passed on the question presented in the instant appeal, the weight of federal authority appears to support the conclusion we reach today.[10] *See United States v. Williams,* 534 F.2d 119,

**10.** The Sixth Circuit Court of Appeals has reached a contrary conclusion by reasoning that a trial court's acceptance of a defendant's negotiated guilty plea to a lesser offense stands as a determination

121–22 (8th Cir.) *cert. denied,* 429 U.S. 894, 97 S.Ct. 255, 50 L.Ed.2d 177 (1976); *United States v. Wells,* 430 F.2d 225, 230 (9th Cir. 1970) (dictum); *Ward v. Page,* 424 F.2d 491, 493 (10th Cir.), *cert. denied,* 400 U.S. 917, 91 S.Ct. 178, 27 L.Ed.2d 157 (1970). *See also Santobello v. New York,* 404 U.S. 257, 263 and n.2, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971) (dictum); Comment, 62 Calif.L.Rev., *supra* at 274–77. Therefore, we hold that the Federal Double Jeopardy Clause does not bar the prosecution of appellant for first degree murder.

### III. *PENNSYLVANIA DOUBLE JEOPARDY.*

The relevant language of the double jeopardy provision in Article 1, section 10 of the Pennsylvania Constitution is essentially identical to that found in the United States Constitution. *See Commonwealth v. Hogan,* 482 Pa. 333, 342, 393 A.2d 1133, 1137 (1978); J. A. Sigler, *supra* at 23. While there has been some dispute as to whether our state provision extends its protection to non-capital crimes, *see Commonwealth v. Henderson, supra,* 482 Pa. at 372, 393 A.2d at 1153, and *Commonwealth v. Sparrow,* 471 Pa. 490, 518 n.2, 370 A.2d 712, 726 n.2 (1977) (Nix, J., dissenting), because the killing in the instant case occurred at a time when first

that the prosecutor has relinquished its right to prosecute defendant on the greater offense. *Mullreed v. Kropp,* 425 F.2d 1095, 1099 (6th Cir. 1970); *accord Rivers v. Lucas,* 477 F.2d 199, 202 (6th Cir.) *vacated and remanded,* 414 U.S. 896, 94 S.Ct. 232, 38 L.Ed.2d 139 (1973). Although this essentially contractual analysis has popular appeal, *see* Comment, The Constitutionality of Reindicting Successful Plea-Bargain Appellants on the Original Higher Charges, 62 Calif.L. Rev. 258, 259 (1974), we have serious reservations about the validity of applying contract law to double jeopardy questions which arise out of negotiated guilty pleas. *See id.* at 268–72 (suggesting that plea bargains may be contracts of adhesion). Whatever the validity of a contractual analysis may be, we think the Seventh Circuit has responded correctly to the *Mullreed* and *Rivers* reasoning. In *United States v. Anderson,* 514 F.2d 583 (7th Cir. 1975), the court expressly rejected the relinquishment rationale by stating that any relinquishment by the prosecution is conditional upon the defendant's being and *remaining* convicted of the lesser offense to which he pleaded guilty. *Id.* at 587. When defendant has his plea set aside, the condition is breached, and the state is free to prosecute on the higher offense. *Id.*

degree murder was punishable by death,[11] even under the most restrictive view, our state's double jeopardy clause is applicable to appellant's case. *See Commonwealth v. Baker*, 413 Pa. 105, 110, 196 A.2d 382 (1964). Although it is questionable whether our state provision, when applicable, provides greater protection than the federal provision, *see Commonwealth v. Hogan, supra*, 482 Pa. at 341–344, 393 A.2d at 1137–38, appellant's argument implies that our case law has extended such enhanced protection.[12]

In so arguing, appellant places primary reliance upon *Commonwealth v. Littlejohn*, 433 Pa. 336, 250 A.2d 811 (1969). In *Littlejohn* the principle issue was whether appellants [13] knowingly and voluntarily relinquished their rights to a direct appeal from judgments of sentence of life imprisonment entered on jury verdicts finding appellants guilty of first degree murder. An essential subsidiary issue, relevant herein, was whether following a successful appeal, a new trial and reconviction, appellants could have been subjected to the death penalty without violating double jeopardy.[14] *Id.*, 433 Pa. at 346–47, 250 A.2d at 815. In holding that appellants could not, consistent with double jeopardy principles, be subjected to the possibility of a death sentence on re-trial, the Court employed by analogy the implied acquittal

**11.** For a brief summary of the checkered history of the death penalty in Pennsylvania, *see Commonwealth v. Moody*, 476 Pa. 223, 244–45, 382 A.2d 442 (1977) (Nix, J., dissenting).

**12.** In light of the textual and policy similarities between the Pennsylvania and United States constitutional provisions, perhaps the better view is that our state provision affords protection co-extensive with that afforded by the Federal Double Jeopardy Clause. *See Commonwealth v. Sparrow*, 471 Pa. 490, 518 n.2, 370 A.2d 712, 726 n.2 (1977) (Nix, J. dissenting).

**13.** *Littlejohn* was a consolidated appeal. *Commonwealth v. Littlejohn*, 433 Pa. 336, 340, 250 A.2d 811 (1969).

**14.** The *Littlejohn* opinion also analyzed this question under due process and equal protection principles. *Id.*, 433 Pa. at 341, 345, 250 A.2d at 813, 815. Since these principles are not properly before us in the instant appeal, we will consider *Littlejohn* only for its double jeopardy holding. *See* notes 4–5 *supra* and accompanying text.

rationale of *Green v. United States, supra. Commonwealth v. Littlejohn, supra,* 433 Pa. at 347, 250 A.2d at 816:

> Nor is any great fiction employed in analogizing this situation to the implied acquittal in *Green.* In Pennsylvania, the jury returns a verdict of first degree murder; then they are required to determine the appropriate sentence (life imprisonment or death) after hearing additional evidence. See Act of June 24, 1939, P.L. 872, § 701, as amended, 18 P.S. § 4701. Although there are no legal standards by which the jury actually makes this sentencing decision, it is certainly true that a jury which returns with a sentence of life imprisonment has determined that the facts in the case do not warrant a death penalty.

Resting, as it does, upon the *Green* implied acquittal rationale, *Littlejohn* is distinguishable under the same reasoning whereby we distinguished *Green,* i. e., that the acceptance of the plea cannot be construed as a determination that the evidence could not support a finding of murder of the first degree.[15] *See* text accompanying notes 9–10 *supra.*

■ More nearly on point is this Court's decision in *Commonwealth v. Metz,* 425 Pa. 188, 228 A.2d 729 (1967). In *Metz* defendant originally entered a negotiated, general plea of guilty to murder. *Id.,* 425 Pa. at 189–90 and n.1, 228 A.2d at 729, n.1. In return, the prosecutor was to advise the court that the crime rose no higher than second degree murder. *Id.* The court accepted defendant's plea, but because of testimony adduced at a subsequent hearing, the court ordered the plea withdrawn on grounds that it was not

---

15. Although appellant presents his *Littlejohn* argument as part of his Pennsylvania double jeopardy contention, *Littlejohn* appears to be based solely upon federal constitutional considerations. However, this fact does not alter our analysis or conclusion. *See* note 12 *supra.*

We also note that although *Littlejohn* was decided in 1969, it did not have the benefit of *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), because *Pearce* was decided several months later. Because *Pearce* made it clear that neither due process, equal protection, nor double jeopardy pose absolute bars to increased punishment upon re-conviction, the continuing vitality of *Littlejohn* as an interpretation of federal constitutional law is open to question.

entered understandingly. *Id.* A plea of not guilty was entered, and at a jury trial defendant was convicted of first degree murder. *Id.* On appeal to this Court from denial of collateral relief, defendant argued that the Pennsylvania Constitution's double jeopardy provision was violated when after the withdrawal of his guilty plea, he was tried and convicted for first degree rather than second degree murder.[16] *Id.* In *Metz* this Court squarely rejected this argument, relying in part upon *United States v. Tateo*, 377 U.S. 463, 84 S.Ct. 1587, 12 L.Ed.2d 448 (1964) (retrial of defendant whose conviction is set aside on collateral attack for error in proceedings leading to conviction is not barred by double jeopardy). The only distinction between *Metz* and the instant case is that appellant's guilty plea was set aside on collateral attack. We fail to see how this distinction is significant for purposes of double jeopardy. Accordingly, we hold that the Pennsylvania Constitutions's double jeopardy provision does not bar the prosecution of appellant for first degree murder.

O'BRIEN and LARSEN, JJ., join this Opinion.

## OPINION IN SUPPORT OF REVERSAL

EAGEN, Chief Justice.

As noted by Mr. Justice Blackmun in his dissenting opinion in *Sanabria v. United States*, 437 U.S. 54, 80, 98 S.Ct. 2170, 2187, 57 L.Ed.2d 43 (1978), there is a "continuing struggle to create order and understanding out of the confusion of the lengthening list of . . . decisions on the Double Jeopardy Clause." Unfortunately, the struggle and confusion are still present.[1]

---

**16.** Defendant based his claim upon the Pennsylvania Constitution, because the federal Double Jeopardy Clause had not yet been made applicable to the States. *See Commonwealth v. Metz*, 425 Pa. 188, 190 n.5, 228 A.2d 729, 730 n.5 (1967).

**1.** Perhaps the confusion is best "understood" or, at least made "comprehensible," by the continuing but fruitless attempts to ascertain an "underlying rationale" for the concepts embodied in the double jeopardy clause as with the rationales of waiver, continuing

In *Green v. United States*, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957), where the defendant was convicted by a jury of murder of the second degree and was then granted a new trial, the Court ruled the Double Jeopardy Clause of the federal Constitution prevented a conviction in the retrial of murder of the first degree. But see, the dissenting opinion of Mr. Justice Frankfurter, *id.* at 197, 78 S.Ct. at 229, in which Justices Burton, Clark and Harlan joined.

Some twelve years later in *North Carolina v. Pearce*, supra n. 1, the Court ruled double jeopardy does not per se prevent the imposition of a more severe sentence following the defendant's conviction in a retrial, than that imposed following a conviction in the initial trial which had been set aside for trial error.[2]

Regardless of the foregoing, and even though I concede Mr. Justice Nix is probably correct in his interpretation of relevant federal authorities, I personally would still rule against the present appellant being retried for anything greater than murder of the third degree as a matter of policy for the following reasons:

First, underlying *Green* is a principle that one should not be put in the position of being compelled to serve an invalid sentence because of fear that a greater sentence may be imposed if he contests the conviction and is granted a new trial. It may well be that the "implied acquittal" rationale of *Green* is inapposite instantly, but the principle of not permitting fear to deprive one of the exercise of appellate rights *is* applicable. *Cf. Pearce.* Further, that principle takes on added dimension where, as in this Commonwealth, it involves a constitutional right. See Pa.Const. art 5, § 9.

jeopardy, a clean slate, and the like. See, e. g., *United States v. Scott*, 437 U.S. 82, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978); *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2089, 23 L.Ed.2d 656 (1969); *Green v. United States*, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957); *United States v. Ball*, 163 U.S. 662, 16 S.Ct. 1192, 41 L.Ed. 300 (1896).

**2.** I agree with Mr. Justice Nix that there are inconsistencies in *Pearce* and *Commonwealth v. Littlejohn*, 433 Pa. 336, 250 A.2d 811 (1969).

Further, I believe our *Littlejohn* ruling, which pre-dated *Pearce*, was appropriate in light of *Green* at the time it was made. See generally, *Pearce* supra, 395 U.S. at 744, 89 S.Ct. at 2085 (Harlan, J. concurring and dissenting); *Pearce*, supra at 727, 89 S.Ct. at 2089 (Douglas, J. concurring joined by Marshall, J.); cf. *Green*, supra, 355 U.S. at 198, 78 S.Ct. at 229 (Frankfurter, J. dissenting).

Second, while the issue of due process is not before us as Mr. Justice Nix correctly points out, at n. 5 and accompanying text, I see no shackles in my considering that portion of *Pearce* which deals with due process as a factor affecting my determination of what the policy of this Commonwealth shall be as to retrials in cases of this nature; in discussing due process, *Pearce* stated that "vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial." *Pearce*, supra, 395 U.S. at 725, 89 S.Ct. at 2080. *Pearce* would appear to preclude imposition of a greater sentence on the present appellant than that imposed following his conviction of murder of the third degree absent further post-sentence conduct.[3] If this is so, why subject the defendant to a trial on murder of the first degree?

Nor do I believe that the possibility of vindictiveness by a prosecutor, rather than a court, should serve to distinguish *Pearce*. In any event, the defendant is restrained from exercising his constitutional right to appeal.

While it is true that the instant appeal is pursuant to *Commonwealth v. Bolden*, 472 Pa. 602, 373 A.2d 90 (1977), and while we have not extended *Bolden* beyond the issue of double jeopardy, I would, under the circumstances of this case, assume jurisdiction and grant relief. See 42 Pa.C.S.A. § 726.

---

**3.** I say "appear" because the facts instantly are different from *Pearce*; but, if the sentence of one convicted of the same crime following retrial cannot be increased absent "indentifiable conduct on the part of the defendant *occurring after the time of original sentencing*," it would seem to follow that a conviction for a higher degree of a crime would not meet the requirements to increase the sentence.

## OPINION IN SUPPORT OF REVERSAL AND REMAND FOR TRIAL ON CHARGES NOT TO EXCEED MURDER OF THE THIRD DEGREE

ROBERTS, Justice.

In 1976, appellant and the Commonwealth entered into a negotiated plea agreement. Appellant agreed to plead guilty to murder of the third degree and aggravated assault. The Commonwealth, in return, made a good faith promise that it would not seek conviction on a higher degree of homicide and would move to dismiss the other charges. Appellant agreed to waive many of his constitutional rights when he entered into the agreement. He did not, however, waive his right to appeal from the subsequent conviction.

The court of common pleas accepted appellant's plea, adjudged appellant guilty of murder of the third degree and imposed sentence. Later, appellant exercised his constitutional right to appeal judgment of sentence and obtained a new trial when a post-verdict hearing court determined that the conviction was based upon a defective guilty plea. The Commonwealth did not appeal this order but instead, in 1978, chose to demonstrate its disagreement with the court's decision by subjecting appellant to more serious homicide charges on retrial.

This record demonstrates a vindictive injustice which offends the American sense of justice and fair play. The Commonwealth's attempt to convict appellant of greater charges on retrial endangers appellant's rights under the double jeopardy clause. The Opinion of Mr. Justice Nix, however, finds no denial of constitutional rights and permits the Commonwealth to punish appellant for successfully establishing that his guilty plea was invalid. The protection afforded against double jeopardy by the Pennsylvania and United States Constitutions is a vital and highly valued safeguard. "If such great constitutional protections are given a narrow, grudging application they are deprived of much of their significance." *Green v. United States*, 355 U.S. 184, 198, 78 S.Ct. 221, 229, 2 L.Ed.2d 199 (1957). By

reading the double jeopardy clause in an inexcusably narrow manner, the Opinion of Mr. Justice Nix once again compels a Pennsylvania litigant to seek vindication and protection of his constitutionally guaranteed rights in the federal courts. See, e. g., *United States ex rel. Sullivan v. Cuyler*, 593 F.2d 512 (3 Cir. 1979). I must dissent.

## I

In *Breed v. Jones*, 421 U.S. 519, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975), the Supreme Court unanimously held that prosecution of a juvenile in adult court after an adjudication of delinquency in juvenile court arising out of the same offense violated the double jeopardy clause. The Court observed:

"[T]he risk to which the term jeopardy refers is that traditionally associated with 'actions intended to authorize criminal punishment to vindicate public justice.' Because of its purpose and potential consequences, and the nature and resources of the State, such a proceeding imposes heavy pressures and burdens—psychological, physical, and financial—on a person charged. The purpose of the Double Jeopardy Clause is to require that he be subjected to the experience only once 'for the same offence.' "

Id. at 529–30, 95 S.Ct. at 1786 (citations omitted). The Court noted the lack of any persuasive distinctions between the potential consequences and risks of the adjudicatory juvenile court hearing and those of a traditional criminal prosecution, "each of which is designed 'to vindicate [the] very vital interest in enforcement of criminal laws,' " Id. at 531, 95 S.Ct. at 1786, and concluded that jeopardy attached at the adjudicatory juvenile court hearing.

Appellant was subjected to the risks to which the term jeopardy refers at his guilty plea hearing. The Supreme Court has recognized "the adjudicative element inherent in accepting a plea of guilty." *Santobello v. New York*, 404 U.S. 257, 262, 92 S.Ct. 495, 499, 30 L.Ed.2d 427 (1971). Moreover, under Pennsylvania law, a trial court's acceptance of a guilty plea must be predicated upon an adjudication of whether there is a factual basis to support the agreed upon

degree of guilt. *Commonwealth v. Minor*, 467 Pa. 230, 356 A.2d 346 (1976); *Commonwealth v. Ingram*, 455 Pa. 198, 316 A.2d 77 (1974); *Commonwealth v. Maddox*, 450 Pa. 406, 300 A.2d 503 (1973); Comment to Pa.R.Crim.P. 319(a). See also ABA Project on Standards for Criminal Justice, Standards Relating to Pleas of Guilty § 1.6 (Approved Draft, 1968) ("Notwithstanding the acceptance of a plea of guilty, the court should not enter a judgment upon such plea without making such inquiry as may satisfy it that there is a factual basis for the plea.") Accord, ABA Project on Standards for Criminal Justice, Standards Relating to the Function of the Trial Judge § 4.2(b).

The fact that appellant would have been entitled to withdraw his plea if the trial court concluded that degree of guilt rose higher than murder of the third degree and refused to accept the terms of the plea bargain agreement, see Pa.R. Crim.P. 319(b)(3), does not alter the fact that until appellant was formally adjudicated guilty of murder of the third degree he was at risk of conviction of a higher degree of homicide. Only when judgment of sentence was entered on the conviction of murder of the third degree was appellant relieved of the risk that the terms of his plea bargain agreement would be rejected by the trial court and that he would be forced to go to trial on the indictment charging murder generally. *Commonwealth v. Metz*, 425 Pa. 188, 228 A.2d 729 (1967) (where plea to murder of the second degree withdrawn prior to sentence, defendant may be tried for murder of the first degree). Indeed, until sentence was imposed appellant was subjected to heavy psychological, physical, and financial burdens with regard to murder of the first, second and third degrees. And, it cannot be denied that like traditional trials, guilty pleas and the plea bargaining process are designed to vindicate the vital interest in enforcement of criminal laws. Cf. *Commonwealth v. Alvarado*, 442 Pa. 516, 276 A.2d 526 (1971) (plea bargaining frequently serves the best interest of the Commonwealth as well as that of the accused). It must therefore be concluded that jeopardy attached to all degrees of criminal homicide at appellant's guilty plea hearing.

*Green v. United States*, supra, held that a defendant tried for murder of the first and second degrees, convicted by a jury of murder of the second degree, and, on appeal, granted a new trial, could not be retried for any degree of homicide greater than murder of the second degree. The Court expressly stated that its holding did not rest alone on the legitimate assumption that the jury had impliedly acquitted Green of murder of the first degree, when it convicted him of murder of the second degree. Instead, the Court focused on the fact that the jury, for whatever reason, had refused to convict Green of the higher offense and that once the jury was discharged, Green's jeopardy for first degree murder came to an end. As the Court observed:

"After the original trial, but prior to his appeal, it is indisputable that Green could not have been tried again for first degree murder for the death resulting from the fire. A plea of former jeopardy would have absolutely barred a new prosecution even though it might have been convincingly demonstrated that the jury erred in failing to convict him of that offense. And even after appealing the conviction of second degree murder he still could not have been tried a second time for the first degree murder had his appeal been unsuccessful."

Id. at 191, 78 S.Ct. at 225.

In view of the trial court's authority in Pennsylvania to reject a negotiated plea, an adjudication in which it is determined that the plea is supported by a factual basis and in which the plea of guilty is accepted, necessarily includes the court's rejection of greater degrees of guilt. Once, as here, judgment of sentence is entered on the plea, jeopardy for the greater offenses of which the court and prosecution have refused to convict must come to an end. Just as in *Green*, it is indisputable that had appellant not challenged his conviction, or had his challenge failed, he could not have been tried for murder of the first or second degrees arising out of the same offense.

The Commonwealth urges, and the Opinion of Mr. Justice Nix agrees, that because appellant successfully challenged

his plea, he has lost the protection from conviction of murder of the first and second degrees that he otherwise indisputably would have had. The result is to present those who, like appellant, are convicted of crimes on the basis of improper guilty pleas with a Hobson's choice—to either quietly and passively accept an erroneous and unjust conviction or to seek vindication of one's rights and subject oneself to possible conviction of a more serious offense. In *Green*, the Court interpreted the double jeopardy clause to protect against just such a dilemma.

## II

This Court is not, of course, obliged to decide this case on federal or state constitutional grounds. We have regularly expressed a preference for avoiding constitutional claims where a non-constitutional disposition is available. See, e. g., *Mt. Lebanon v. County Board of Elections*, 470 Pa. 317, 322, 368 A.2d 648, 650 (1977). Indeed, in *Commonwealth v. Galloway*, 476 Pa. 332, 382 A.2d 1196 (1978), this Court found this preference so strong that it granted relief on a non-constitutional ground even though the question the appellant presented was solely of constitutional dimension. Here too I would adhere to this stated preference for avoiding constitutional questions and instead fashion a rule barring retrial on greater charges under this Court's supervisory authority. See, e. g., *Commonwealth v. Campana*, 455 Pa. 622, 314 A.2d 854, cert. denied, 417 U.S. 969, 94 S.Ct. 3172, 41 L.Ed.2d 1139 (1974).

A holding that retrial on the greater charges is barred would, of course, protect the defendant from again being forced to undergo the inevitable anxiety that he may be convicted of a more serious crime which, as in the typical trial, accompanies the degree of guilt hearing on the negotiated plea. But equally important, such a holding avoids many other evils inherent in permitting retrial on the greater charges on these facts. It protects appellant from prosecutorial vindictiveness in retaliation for having successfully exercised his right to appeal or collaterally attack an inade-

quate guilty plea colloquy. See *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969); *Green v. United States,* supra. Moreover, it furthers the policy established by this Court in *Commonwealth v. Alvarado,* supra, and by the United States Supreme Court in *Santobello v. New York,* supra, that the prosecution be required to bargain in good faith as well as strictly and faithfully uphold its end of a plea bargain agreement and treat the accused with fairness throughout the plea bargaining process. See ABA Standards, The Prosecution Function § 4.3; Pleas of Guilty § 2.1(a)(ii)(4), (5). Indeed, in *Santobello,* it was recognized that the accused's right to be treated with fairness throughout the process rises to constitutional dimensions. The Commonwealth's duty to act in good faith throughout the guilty plea procedure does not diminish upon successful collateral attack. Appellant did not, and indeed could not, bargain away his right to obtain relief from an improper guilty plea hearing. Yet, if the Commonwealth is permitted to punish appellant for pursuing his right of appeal by subjecting him to a higher degree of homicide, appellant will have, in reality, nonetheless lost his constitutional right of appeal. As the Supreme Court recognized in *North Carolina v. Pearce,* supra, 395 U.S. at 724, 89 S.Ct. at 2080:

> "Where . . . the original conviction has been set aside because of a constitutional error, the imposition of such a punishment, 'penalizing those who choose to exercise' constitutional rights, 'would be patently unconstitutional.' . . . And the very threat inherent in the existence of such a punitive policy would, with respect to those still in prison, serve to chill the exercise of basic constitutional rights. . . . But, even if the first conviction has been set aside for nonconstitutional error, the imposition of a penalty upon the defendant for having successfully pursued a statutory right of appeal or collateral remedy would be no less a violation of due process of law." (Citations omitted).

Most recently, in *Cooper v. United States,* 594 F.2d 12 (4th Cir. 1979), the fourth circuit held this "constitutional right to

'fairness' to be wider in scope than that defined by the law of contract." Any claim that appellant's purported "breach" of the plea bargain agreement permits the Commonwealth as well to abandon its prior agreement must be rejected. This is a criminal proceeding and not a controversy regarding the contractual rights and obligations of private litigants. Here, a court of competent jurisdiction adjudicated appellant guilty of murder of the third degree and imposed sentence. So too a court of competent jurisdiction, in an adjudication unchallenged on appeal, decided that the conviction of murder of the third degree was based upon a defective plea of guilty. Our law, based upon the principles of fairness and sound judicial administration, dictates that this claimed analogy to the law of contracts not only has no place in the administration of criminal justice, but also ignores the overriding interest in not chilling appellant's appellate right to obtain relief from an improper judgment of sentence. Any resulting "unfairness" to the Commonwealth may easily be avoided by prosecutors taking greater care to insure that guilty plea colloquies meet all the requirements of law and are fully adequate to insure that the waiver recorded is truly voluntary and knowing, by appealing from adverse orders on collateral attack, which here the Commonwealth chose not to do, and by re-offering the terms of the prior plea bargain agreement to an accused who on appeal or collateral attack has been permitted to withdraw a plea. Indeed, a holding limiting reprosecution to the lesser. offense should have the meritorious remedial effect of limiting the number of successful appeals from guilty pleas by encouraging the prosecution to take a more active role in assuring that guilty plea hearings comply with this Court's substantive and procedural rules.

### III

This Court has long held that the Commonwealth may not act as "a vindictive seeker of vengeance." *Commonwealth v. Karamarkovic*, 218 Pa. 405, 408, 67 A. 650, 651 (1907). The successful exercise of a constitutional right to obtain

relief from an improperly accepted guilty plea may not be the basis for retaliatory reprosecution on greater charges. By permitting appellant to plead to murder of the third degree ab initio, the prosecution and trial court recognized that the interests of the Commonwealth in law enforcement and the administration of justice would be adequately served by conviction of the lesser offense. See *Commonwealth ex rel. Kerekes v. Maroney*, 423 Pa. 337, 223 A.2d 699 (1966). In 1976, the Commonwealth believed that justice was served by convicting and sentencing appellant on charges of murder of the third degree. Why is not justice again served in 1979 by trying appellant on murder of the third degree, rather than the higher charges?

I would reverse the order of the trial court and remand for trial on charges no higher than murder of the third degree.

### OPINION IN SUPPORT OF REVERSAL

MANDERINO, Justice.

I dissent. The majority reaches its conclusion by reasoning that appellant was never placed in jeopardy for murder of the first degree since the charge was never submitted to a trier of fact. However, the majority does admit that although appellant was indicted for murder of the first degree, the prosecution agreed, *and the trial court accepted* the agreement that the prosecution would not seek a conviction higher than murder of the third degree. Indeed, the trial court sentenced appellant to ten to twenty years imprisonment on the charge of murder of the third degree.

I do not agree that because the trial court may have had other "considerations that would justify the acceptance of a plea for a lesser degree than the evidence might support," there are no "legitimate basis for concluding that the court's acceptance of the plea should be construed as an acquittal of a higher degree of the offense." (at p. ——). *Whatever* the considerations of the trial judge, he did accept the plea *and* sentence appellant for murder of the third degree.

Now that appellant has proven his original guilty plea to be invalid, he cannot be placed in jeopardy for a higher degree of murder at a new trial. The majority is ignoring the realities of the situation and forcing future appellants to accept sentences based on invalid pleas or take their chances with a new trial. It is the duty of our courts to see that those accused do not have to serve sentences based on invalid pleas and are not coerced by fear into giving up their appellate rights. For the reasons stated, I completely agree with Parts I and III of the opinion in support of reversal by Mr. Justice Roberts.

ROBERTS, Justice, dissenting from denial of application for reargument.

Today, the majority refuses to grant reargument in *Commonwealth v. Klobuchir,* a case in which this Court was equally divided. Indeed, the majority here denies the petition for reargument in spite of the fact that reargument has been ordered by this Court sua sponte in an almost identical case, *Commonwealth v. Newmiller,* J. 171 (1979). Is it not inequitable to force petitioner to proceed to trial in jeopardy of being convicted of murder of the first degree after successfully challenging the judgment of sentence on a guilty plea to murder of the third degree, while granting *Newmiller* an opportunity to persuade a majority of the full Court of the merits of his constitutional claims. What could be more unjust than denying that same right to Klobuchir? In my view, the record here plainly establishes petitioner's entitlement to reargument just as conclusively as did the record supporting the Court's sua sponte grant of reargument in *Newmiller.* The fair and equal administration of criminal justice mandates that, at the very least, this case should be heard with *Newmiller* or that the disposition here should be deferred until *Newmiller* is decided.

Thus, for the reasons stated by Mr. Chief Justice Eagen and Mr. Justice Manderino in their separate opinions in support of reversal in *Klobuchir,* as well as in my opinion in support of reversal, and for the additional reasons noted here, I must dissent from the denial of petitioner's application for reargument.

The issue presented is one of paramount constitutional dimension and its resolution is of immense jurisprudential and practical significance in maintaining the integrity and vitality of the plea bargaining process and the fair and equal administration of criminal justice. Indeed, until it is resolved the very effectiveness of the criminal justice system is seriously imperiled. Sixty-five to ninety-five percent of all criminal cases are disposed of by guilty pleas. If the prosecutor is permitted to exercise vindictiveness upon those who successfully challenge unlawful guilty pleas it is evident that guilty pleas will be much more difficult to obtain. Were most criminal cases to go to trial, experience and reality tell us that the volume of trials would impose unusually heavy burdens on judicial and professional resources, greatly increase expenditures, and significantly add to delays in the disposition of criminal cases.

It is clear that the prosecution's duty to bargain in good faith, a duty that rises to constitutional dimensions, see *Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), does not end upon successful appeal or collateral attack of a guilty plea. Indeed, the Commonwealth's duty is not altered at all. The duty of the prosecution remains to ensure that none of the accused's constitutional rights are once again violated during the renewed proceedings. The United States Supreme Court very recently re-emphasized "that a prosecutor 'is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a particular and very definite sense the servant of the law . . . .' *Berger v. United States,* 295 U.S. 78, 88, 55 S.Ct. 629, 79 L.Ed. 1314." *Gannett Co. v. DePasquale,* —— U.S. ——, ——, 99 S.Ct. 2898, 2908, 61 L.Ed.2d 608 n.12 (1979).

The most basic principles of American jurisprudence forbid this Court to allow the Commonwealth to coerce those serving sentences based on invalid pleas into forfeiting their

appellate rights because they fear prosecutorial retaliation. Indeed, the Commonwealth may not act as "a vindictive seeker of vengeance." *Commonwealth v. Karamarkovic,* 218 Pa. 405, 408, 67 A. 650, 651 (1907). In *Blackledge v. Perry,* 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974), the United States Supreme Court held that the vindictiveness inherent in reindictment and re-trial on increased charges after a successful exercise of appellate rights violated the due process clause of the federal constitution. In a very recent opinion, the United States Court of Appeals for the Fifth Circuit stated that "when an accused is convicted and successfully exercises his statutory or constitutional rights to obtain direct or collateral relief from the conviction, a state may not marshal more numerous or severe charges against the defendant in order to punish him for availing himself of appropriate remedies or discourage future defendants from a similar exercise of their rights." *Miracle v. Estelle,* 592 F.2d 1269, 1272 (5th Cir. 1979). Indeed, a basic tenet of our criminal justice system does not permit a defendant to be penalized for exercising one right by having another taken away. See, e. g., *United States v. Jackson,* 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968) (government may not use fear of death penalty to dissuade defendant from asserting right to jury trial); *Garrity v. New Jersey,* 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967) (prosecution cannot use statement obtained from policemen threatened with discharge if they refuse to testify); *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2089, 23 L.Ed.2d 656 (1969) (accused may not be penalized for successfully exercising right to appeal by receiving enhanced sentence on retrial); *Green v. United States,* 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957) (accused may not be forced to waive protection against double jeopardy to receive reversal of erroneous conviction on lesser offense).

Article V, section 9 of the Constitution of Pennsylvania guarantees a right of appeal to all litigants in the courts of this Commonwealth. Although a guilty plea incorporates waivers of many important constitutional rights, an accused

by pleading guilty does not waive the right to appeal and obtain relief from an invalid guilty plea. See *Commonwealth v. Maddox,* 450 Pa. 406, 300 A.2d 503 (1973); *Commonwealth v. Zanine,* 444 Pa. 361, 282 A.2d 367 (1971); *Commonwealth v. Stokes,* 426 Pa. 265, 232 A.2d 193 (1967). Moreover, when the right of an accused to a direct appeal from a guilty plea is denied, relief from the invalid conviction is available on collateral attack. See *Commonwealth v. Ray,* 483 Pa. 377, 396 A.2d 1218 (1979). Indeed, fair and evenhanded administration of justice demands that the prospect of a more severe sentence or of conviction of an offense of higher degree upon reprosecution is an unacceptable deterrent to exercise of the right of appeal or collaterally attack an invalid plea. ABA Project on Standards for Criminal Justice, Standards Relating to Post-Conviction Procedures § 2.3(c)(iii).

Permitting the Commonwealth, as the majority does by denial of reargument, to penalize successful appellants can only serve to deny, or at least to chill, appellate rights and to destroy the constitutional guarantee against double jeopardy and the vital and important goals of the fair, just, orderly and efficient administration of justice. The constitutional guarantee against double jeopardy requires that on this record, on re-trial, appellant be tried on charges not greater than murder of the third degree. The majority's failure to grant relief, or at the very least reargument, denies petitioner the opportunity to pursue his constitutional claims in the state courts and as in *United States ex rel. Sullivan v. Cuyler,* 593 F.2d 512 (3d Cir. 1979), forces petitioner to turn to the federal courts for the constitutional relief to which he is entitled and which the state court should have granted.

NIX, Justice, in support of denial of reargument.

A major thrust of the Dissenting Statement of Mr. Justice Roberts from the Denial of Reargument in *Commonwealth v. Klobuchir,* 486 Pa. 241, 405 A.2d 881 (1979), is that it is unfair not to grant reargument in *Klobuchir* when this Court has sua sponte ordered reargument in *Commonwealth*

*v. Newmiller,* 448 Jan. Term, 1977. Although Mr. Justice Roberts is correct in his assertion that both *Klobuchir* and *Newmiller* concern a similar double jeopardy issue, he completely ignores the fact that the procedural posture of these cases differs markedly.

In *Klobuchir* it was quite clear that appellant had waived the issues of due process and equal protection because they were raised for the first time only in his appeal to our Court. Since they were not raised in the trial court either in his pre-trial application or in his brief in support of that motion, those two grounds for relief were waived and not properly before us. See 486 Pa. at 246–247, 405 A.2d at 883–884. *See generally* Pa.R.A.P. 302(a). Additionally, the appeal was interlocutory and was entertained pursuant to *Commonwealth v. Hogan,* 482 Pa. 333, 393 A.2d 1133 (1978), and *Commonwealth v. Bolden,* 472 Pa. 602, 373 A.2d 90 (1977). See 486 Pa. at 246, n.3, 405 A.2d at 883, n.3. In both of those cases, this Court stated that we have jurisdiction to hear an otherwise nonappealable interlocutory appeal from the denial of a defendant's pre-trial motion to dismiss an indictment only where *double jeopardy* grounds are asserted. And, as Mr. Chief Justice Eagen recognized in his Opinion in Support of Reversal in *Klobuchir,* "we have not extended *Bolden* beyond the issue of double jeopardy," 486 Pa. at 258, 405 A.2d at 890. Consequently there was no jurisdictional basis for this court to entertain any issues other than double jeopardy in *Klobuchir's* appeal.

In *Newmiller,* however, we are presented with a *direct appeal* from the denial of post-verdict motions following trial in which Newmiller was found guilty of first degree murder. As such, our jurisdiction is not limited solely to double jeopardy claims and the Court may entertain other grounds for relief, such as due process or equal protection, if they are properly raised and preserved from the trial.

It is obvious that because of his failure to recognize the differing procedural posture of these two cases, Mr. Justice Roberts has mistakenly concluded that reargument would be appropriate in this case.