426 A.2d 582

**COMMONWEALTH of Pennsylvania,**

v.

**Joseph SAMPLE, Appellant.**

Supreme Court of Pennsylvania.

Argued Oct. 23, 1980.

Decided March 13, 1981.

348

David L. Pollack, Philadelphia, for appellant.

Robert B. Lawler, Chief, Appeals Div., Ann Lebowitz, Philadelphia, for appellee.

Before O'BRIEN, C. J., and ROBERTS, NIX, LARSEN, FLAHERTY and KAUFFMAN, JJ.

## OPINION

O'BRIEN, Chief Justice.

This interlocutory[1] pre-trial appeal is from an Order of the Court of Common Pleas, Philadelphia, which denied a motion by appellant, Joseph Sample, to dismiss various informations.

In July of 1975, appellant was convicted by a jury of murder of the second degree, robbery, conspiracy and three weapons offenses. Post-verdict motions were denied and appellant was sentenced to life imprisonment for the murder conviction with concurrent prison terms of eight-to-twenty years for the robbery conviction, five-to-ten years for the conspiracy conviction and two-to-five years for the weapons offenses. No direct appeal was taken.

Appellant subsequently filed a petition pursuant to the Post-Conviction Hearing Act and was granted the right to file his appeal *nunc pro tunc.* Said appeal was transferred to the Superior Court on the Special Transfer Docket. The Superior Court reversed and granted appellant a new trial

---

1. This appeal is allowed by our decision in *Commonwealth v. Bolden,* 472 Pa. 602, 373 A.2d 90 (1977).

because of prosecutorial misconduct.[2]  *Commonwealth v. Sample*, 270 Pa.Super. 47, 410 A.2d 889 (1979).

On April 3, 1980, appellant filed a motion to dismiss informations, alleging that the trial would violate the double jeopardy clauses of both the United States and Pennsylvania Constitutions.  Said motion was denied and this appeal followed.

The Superior Court granted appellant a new trial, holding that appellant had been denied the effective assistance of counsel when his attorney had failed to preserve for appellate review the issue of prosecutorial misconduct concerning improper remarks made by the prosecutor during his closing arguments to the jury.  To put the entire matter in its proper context, a synopsis of the evidence adduced at trial is necessary.

Claudette Tingle, wife of the victim, Bruce Tingle, testified that on January 7, 1975, two men entered the Tingle home.  One of the men, subsequently identified as appellant, was armed with a pistol.  Mrs. Tingle recognized the other man, Norman Miller, from previous visits to the house.  The gunman demanded both marijuana and money and the victim complied.  At this point, according to Mrs. Tingle's testimony, the gunman order her to leave the room.  Shortly thereafter, Mrs. Tingle heard shots and saw appellant's companion run out of the house.  Mrs. Tingle ran out of the house with her two-year-old child.  After leaving the child at the neighbor's house and asking the neighbor to call the police, Mrs. Tingle returned toward her home where she found the victim lying on the sidewalk.  Mr. Tingle died shortly thereafter.

Later the same afternoon, appellant went to Graduate Hospital for treatment of gunshot wounds.  While he was undergoing treatment, Mrs. Tingle identified appellant as her husband's assailant.  Appellant refused to discuss the incident with police.

**2.** The Superior Court also held that the evidence presented at the original trial was insufficient to sustain two of the three convictions on the weapons offenses.

Appellant testified that he was present at the victim's home at the time of the shootings. In his version, however, appellant stated that he had gone to the victim's house to buy some marijuana. While there, appellant claimed that four unknown gunmen entered the house and shot both the victim and appellant.

During questioning by the prosecutor of a police officer who spoke with appellant at the hospital, the following exchange occurred:

"Q. Now please go on in your own words and tell us what, if any conversation, you then had with Mr. Sample?

"A. After the doctors had got finished working on him, I asked him for his name, his age, his residence, what happened to him, what location he was taken from.

"Q. Why were you seeking that information, Detective?

"A. For the reason that there was another male that had been brought in, deceased, from Chadwick and Dickinson Streets, also in the South Philadelphia area, and to find out whether this crime was related.

"Q. And did you get any response from Mr. Sample?

"A. I got a response to all questions except the question of how he got shot."

Appellant's trial counsel objected and the court sustained the objection, instructing the jury that no adverse inferences may be drawn from a defendant's silence. Despite the fact that the objection had been sustained and a cautionary instruction had been given, the prosecutor closed, in part, as follows:

"I suggest to you if he was in that house with four other persons, being robbed and shot, like everyone else, what is the first thing you would say to a police officer at the hospital."

Further, at the conclusion of his closing, the prosecutor stated:

"The question is no longer what the verdict is, the question is how long are you as twelve people, going to

tolerate this type of activity. . . . Come back, in a clear voice and say to this community that you no longer will stand for this activity . . . ."

Because the question concerning the propriety of the two comments had not been preserved for appellate review, the Superior Court granted appellant a new trial, finding he had been denied the effective assistance of counsel. *Commonwealth v. Sample, supra.*

Appellant now argues that the prosecutorial misconduct at the first trial should bar retrial. In *Commonwealth v. Starks*, 490 Pa. 336, 416 A.2d 498, 500 (1980), we stated:

"The United States Supreme Court has enunciated principally two types of prosecutorial overreaching. First there is the prosecutorial misconduct which is designed to provoke a mistrial in order to secure a second, perhaps more favorable, opportunity to convict the defendant. See *United States v. Dinitz, supra,* [424 U.S. 600] at 611, 96 S.Ct. [1075] at 1081 [47 L.Ed.2d 267]. Second there is the prosecutorial misconduct undertaken in bad faith to prejudice or harass the defendant. See *Lee v. United States, supra* [432 U.S.] at 32, 97 S.Ct. at [2141] 2147 [52 L.Ed.2d 80]; *United States v. Dinitz, supra* [424 U.S. 600] at 611, 96 S.Ct. [1075] at 1081–82, [47 L.Ed.2d 267]. In contrast to prosecutorial error, overreaching is not an inevitable part of the trial process and cannot be condoned. It signals the breakdown of the integrity of the judicial proceeding, and represents the type of prosecutorial tactic which the double jeopardy clause was designed to protect against."

We are thus required to distinguish between prosecutorial error, which often surfaces because of overzealousness on the part of the prosecutor, and overreaching. While the distinction between the two is by no means clear-cut, we do not believe the instant conduct amounted to overreaching. While we are in no way condoning the prosecutor's actions, which clearly entitled appellant to a new trial, we believe, after a thorough review of the record that the instant

prosecutorial conduct falls short of overreaching. Retrial should thus be allowed in the instant case.

Order affirmed.

NIX, LARSEN and KAUFFMAN, JJ., concur in the result.