441 A.2d 1298

**COMMONWEALTH of Pennsylvania**

v.

**Frank W. ROSS, Appellant.**

Superior Court of Pennsylvania.

Submitted Jan. 19, 1981.

Filed Feb. 19, 1982.

Petition for Allowance of Appeal Denied April 30, 1982.

Nino V. Tinari, Philadelphia, for appellant.

Gaele McLaughlin Barthold, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before HESTER, CIRILLO and POPOVICH, JJ.

POPOVICH, Judge:

This is an appeal from the Order of the Court of Common Pleas of Philadelphia County denying appellant's Motion to Dismiss the Bills of Information at Nos. 493 and 494 on double jeopardy grounds.[1]  We affirm.

Appellant was tried before a judge for Criminal Conspiracy, Burglary, Theft by Unlawful Taking and Theft by Receiving Stolen Property.  However, prior to the completion of the proceedings, a mistrial was granted on appellant's motion.  The facts leading up to the mistrial are as follows:

On July 29, 1977, the owner of a Philadelphia bar found his premises burglarized and reported to the police that liquor, money and cigarettes were taken.  At trial, Officer Martin Holmes testified that, at approximately 5:15 A.M. on the day in question, he observed a dark colored vehicle go through the traffic light at 7th and Oregon Avenue.  Officer Holmes signaled the vehicle to stop and then observed a large quantity of cigarettes, alcohol and money in the back seat.  He took the keys out of the ignition and went back to his cruiser.  The driver jumped out of the vehicle and ran.  Officer Holmes identified the driver as the appellant.

The defense presented alibi witnesses and raised the issue of misidentification by Officer Holmes, contending that because appellant's brother, Timothy Ross, exhibited similar physical characteristics it may have been he driving the vehicle instead of the accused.  Additionally, appellant's father testified that he saw his son Timothy driving a 1964 or 1965 Chevy on July 28, 1977 at 8:30 P.M., which was the vehicle stopped by Officer Holmes.

The attorney for the Commonwealth secured Timothy Ross for trial and called him to the stand on rebuttal.  Prior to Mr. Ross testifying, defense counsel moved for a mistrial based on his knowledge that the witness would invoke the Fifth Amendment.  The motion was denied.

---

1. Under *Commonwealth v. Haefner*, 473 Pa. 154, 373 A.2d 1094 (1977) and *Commonwealth v. Bolden*, 472 Pa. 602, 373 A.2d 90 (1977) (plurality opinion), a defendant may appeal an order denying his pre-trial motion for relief under the double jeopardy clause.

Mr. Ross, after being advised of his Fifth Amendment rights by the trial judge, answered a few of the Commonwealth's questions before refusing to respond to the query of "What kind of car" he was driving "about July 29th, 1977[.]" (N.T. 188) At this point, the Commonwealth's attorney stated to the trial judge that he had been authorized by the District Attorney to grant immunity to the witness as to "any and all prosecutions arising out of the case at bar, and all involvement he may have had in any way, shape or form arising out of an incident, which [was] a burglary, that occurred on or about July the 29th, 1977, at My Little Margie's Bar." *Id.* at 189. Though the trial judge issued an immunity decree from the bench, the witness, through his counsel, still refused to testify. Appellant's counsel again moved for a mistrial which was granted.

■ On appeal, appellant contends that the mistrial was caused by "intentional or grossly negligent misconduct on the part of the prosecutor," in that he (the prosecutor) knew that the witness would utilize the Fifth Amendment privilege, and, therefore, he tried to intimidate the witness by the offer of immunity. (Appellant's Brief at 7) The test to be applied in this instance is whether the Commonwealth engaged in either intentional or bad faith "overreaching." *Commonwealth v. Lee*, 490 Pa. 346, 416 A.2d 503 (1980).

■ Generally, the double jeopardy clause does not bar retrial of a defendant who obtains a new trial upon his request for a mistrial. See *Lee v. United States*, 432 U.S. 23, 97 S.Ct. 2141, 52 L.Ed.2d 80 (1977). As the Supreme Court of the United States explained in *United States v. Jorn*, 400 U.S. 470, 485, 91 S.Ct. 547, 557, 27 L.Ed.2d 543 (1971) (plurality opinion) (Harlan, J.):

"[W]here circumstances develop not attributable to prosecutorial or judicial overreaching, a motion by the defendant for mistrial is ordinarily assumed to remove any barrier to reprosecution, even if the defendant's motion is necessitated by prosecutorial or judicial error."

This restriction on the double jeopardy clause, however, is not without its own limitations. The Supreme Court has held that double jeopardy will bar retrial if the defendant sought the mistrial as a result of prosecutorial misconduct amounting to overreaching. See *Lee v. United States*, supra, 432 U.S. at 32, 97 S.Ct. at 2147; *United States v. Dinitz*, 424 U.S. 600, 611, 96 S.Ct. 1075, 1081, 47 L.Ed.2d 267 (1976). Our own high Court has adhered to such standard in deciding whether a retrial is barred; for example, in *Commonwealth v. Mitchell*, 488 Pa. 75, 410 A.2d 1232 (1980), the Court stated:

> "The only exception to the rule permitting retrial is where a defendant's mistrial request is necessitated by prosecutorial error committed intentionally to force the accused to move for mistrial, thereby affording the prosecution another, possibly more favorable, opportunity to convict. When such governmental overreaching or bad faith is found to exist, the double jeopardy clause will bar retrial." (Citations omitted) *Id.*, 488 Pa. at 78, 410 A.2d at 1234.

In the present case, the Commonwealth produced the proprietor of the bar that had been burglarized. The witness recounted that the rear window to the premises and the doors to the back entrance were damaged. He also discovered that money was removed from the vending machines and cash register, as well as a number of liquor bottles from the bar shelf. The police were duly informed of the theft.

Officer Holmes, called on behalf of the Commonwealth, recalled that while on duty in the early morning hours of July 29, 1977, he observed a vehicle run a traffic light. After the vehicle was brought to a stop, the driver exited it and started walking toward the officer. At this point, the officer directed the individual to return to his vehicle and remain there. When the officer approached the vehicle he observed, in plain view, a large quantity of cigarettes, alcohol and money scattered over the rear seat. The driver and the occupant were ordered to place their hands on the dash. The officer removed the keys from the ignition and walked to his cruiser. As he did so, he heard doors opening

and saw the driver running from the scene. The officer did not pursue the escapee; however, he did state, unequivocally, that the appellant was the driver, that he saw him for a total of "[m]aybe two or three minutes[,]" and came in contact with him "[a]bout a foot" outside the vehicle for "[m]aybe a minute to two minutes." (N.T. 35, 36)

On cross-examination, the witness did not waver on the issue of identification. In fact, he described what the appellant was wearing and his physical characteristics. *Id.* at 37.

Only after the appellant put on his case, which consisted of an alibi defense and a claim of misidentification, did the Commonwealth decide to call Timothy Ross on rebuttal. At this stage of the trial, it cannot be said that the Commonwealth's case was going badly, such that aborting the proceedings would have "afford[ed] the prosecution another, possibly more favorable, opportunity to convict." *Commonwealth v. Mitchell,* supra, 488 Pa. at 78, 410 A.2d at 1234; see also *Commonwealth v. Anderson,* 294 Pa.Super. 1, 439 A.2d 720 (1981) (POPOVICH, J., Concurring Opinion) (Whether a case is progressing favorably for the Commonwealth, prior to a motion for a mistrial, is *a factor* to consider in determining if prosecutorial misconduct has occurred to bar reprosecution); accord *Commonwealth v. Clark,* 287 Pa.Super. 380, 430 A.2d 655 (1981).

Ostensibly, the prosecution called Mr. Ross, the appellant's brother and the person the father identified as driving the vehicle in question on the day of the burglary, to counter appellant's claim that he was not the operator of the vehicle stopped by the police. Thus, the question to be resolved is whether it is proper for the Commonwealth to call a witness who it believes, in good faith, will testify and not invoke the Fifth Amendment.

To resolve the issue posed, we look to *Commonwealth v. DuVal,* 453 Pa. 205, 307 A.2d 229 (1973), where the Court held that:

"the prosecution, once informed that a witness intends to claim a privilege against self-incrimination, commits error

in calling that witness to the stand before the jury where the witness is a person (co-defendant, accomplice, associate, etc.) likely to be thought by the jury to be associated with the defendant in the incident or transaction out of which the criminal charges arose." *Id.*, 453 Pa. at 217, 307 A.2d at 234.

In so holding, the *DuVal* Court recognized that the trier of fact might unjustifiably draw an inference of guilt from a witness' refusal to testify and transfer such negative inference to defendant because of his association with the witness. *Id.*, 453 Pa. at 213–14, 307 A.2d at 232–33.

Given the stated purpose for which the law frowns upon the calling of a witness associated with the accused, provided the prosecutor *knows* that such person will invoke his privilege against self-incrimination, we find that the instant case is not an exemplar of those situations in which reprosecution would be barred. See, e.g., *Commonwealth v. Virtu*, 495 Pa. 26, 432 A.2d 198 (1981).

To start with, at trial, the appellant's counsel objected to Mr. Ross testifying and made a motion for a mistrial on the ground that the Commonwealth was "fully aware that this individual [would] utilize the . . . Fifth Amendment . . . ." (N.T. 182) The motion was denied by the trial court. A review of the record lends credence to such action. For example, when the Commonwealth's attorney sought to have the witness take the stand, he stated, in response to the allegation made, that: "Should, in fact, in this case this defendant and this witness, Mr. Timothy Ross, invoke the Fifth Amendment . . . ," *id.* at 183, the finder of fact would have to draw a favorable inference from such invocation.[2] Thus, but for the unsubstantiated assertion by appellant's

2. Even if, arguendo, such were the case, the actions of the party calling said witness to the stand would not be condoned. The Court in *Commonwealth v. Greene*, 445 Pa. 228, 285 A.2d 865 (1971) applied the "principle that the jury may not draw any inference from a witness' exercise of his constitutional rights whether the inference be favorable to the prosecution *or the defense*, . . . [to] th[e] rule that a witness should not be placed on the stand for the purpose of having him exercise his privilege before the jury." (Emphasis in original) *Id.*, 445 Pa. at 232, 285 A.2d at 867.

counsel, we determine that there was an absence of evidence to prove that the Commonwealth knew, in advance, that the witness was predisposed to plead the Fifth Amendment. See *Namet v. United States,* 373 U.S. 179, 188, 83 S.Ct. 1151, 1155, 10 L.Ed.2d 278 (1963) ("It is true, of course, that [the attorney for the defendant] announced that the [witnesses the prosecution sought to have testify against the defendant] would invoke their testimonial privilege if questioned. But certainly the prosecutor need not accept at face value every asserted claim of privilege, no matter how frivolous.").

Consequently, having determined that the Commonwealth's actions, which prompted the mistrial, were neither intentional[3] nor motivated by bad faith, we will let stand the lower court's Order.

Order affirmed.

---

**3.** Indeed, the trial judge specifically found that there was no prosecutorial misconduct. (N.T. 199) Appellant's counsel implicitly acceded to this when he stated that prosecutorial misconduct would not be the basis of any double jeopardy motion he might file. *Id.* at 199–200.