463 A.2d 1097

**COMMONWEALTH of Pennsylvania**

v.

**Kenneth BEAVER, Appellant.**

Superior Court of Pennsylvania.

Submitted March 24, 1983.

Filed July 15, 1983.

Thomas I. Puleo, Philadelphia, for appellant.

Jane Cutler Greenspan, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before HESTER, JOHNSON and POPOVICH, JJ.

POPOVICH, Judge:

This is an interlocutory appeal by the appellant, Kenneth Beaver, from the lower court's Order denying his "Motion to Dismiss Information on Double Jeopardy Grounds."[1] (Motion) We affirm.

An examination of the facts reveals the following: At a bench trial before the Hon. Victor J. DiNubile, Jr., the Commonwealth presented its case against the appellant on charges of Theft (18 Pa.C.S.A. § 3921) and Receiving Stolen Property (18 Pa.C.S.A. § 3925).

The first witness, Louise Patricia Long, testified that she resided at 8645 Rugby Street in Philadelphia with her husband and two children, Michelle and Scott. At approximately 6:30 p.m. on the 2nd of March, 1981, Mrs. Long left home, with Michelle and Scott remaining behind, to go to Bible school, but she did not take her purse containing $148.00. At about 9:30 p.m. she returned to discover that the money in her purse was gone. The children informed her that they were ignorant of its whereabouts or who might have taken it. Upon further inquiry, Michelle did admit appellant had been on the premises. This was confirmed by Scott, who told his mother appellant was alone in the house during the time he went to a neighbor's house to inform Michelle that appellant had arrived to see her. Michelle agreed with Scott, according to Mrs. Long, that "when Scott went to get her he [appellant] could have taken the money. He was left in the house alone." (RR. 14)

As for the missing "food processor" and her husband's two rifles, shotgun and pistol, Mrs. Long could shed no light on the circumstances attendant to their theft, except to mention that she discovered the former missing on March 5th and the latter gone on March 7th.

1. The denial of a pre-trial application to dismiss an indictment or information on the ground that the scheduled trial will violate the defendant's right not to be placed twice in jeopardy may be appealed before the new trial is held. *Commonwealth v. Bolden,* 472 Pa. 602, 373 A.2d 90 (1977); *Commonwealth v. Ross,* 295 Pa.Super. 409, 441 A.2d 1298 (1982).

The next witness to testify for the Commonwealth was Mr. Long. He recounted how, after returning home from Oklahoma on the 7th of March, he had intentions of cleaning his P–38 pistol. When he went to the bedroom closet to retrieve it, he discovered it was gone, along with his other weapons. Mr. Long also stated he gave no one permission to remove the weapons from his home.

Following a series of questions as to when Mr. Long reported the theft to the police, an exchange occurred involving the witness, the trial judge and counsel for both sides that precipitated the mistrial motion; to-wit:

BY MR. INGRAM [Assistant District Attorney]:

Q. Did you talk to the defendant today about any of your firearms, sir?

[George L. Long:]

A. Yes.

Q. Where was that?

A. In the Courtroom, about 10 o'clock.

MR. BANK [Appellant's counsel]: Objection, Your Honor.

THE COURT: Overruled.

BY MR. INGRAM:

Q. What did he say?

THE COURT: Was the DA or any police officers around when you spoke to him?

MR. BANK: I would like an offer of proof.

BY MR. INGRAM:

Q. During this recess, was there a conversation with the defendant in the presence of defense counsel, and Mr. Moore who is here to present [sic] you Mr. Long?

A. There was conversation as to the possession of the weapons and who might have had them.

MR. BANK: I was there and my client did not make any statements, and I would like an offer of proof.

THE COURT: May I ask you this? Did you have any conversation with the defendant after you discovered the guns missing except for the conversation today—

BY MR. INGRAM:

Q. What was the conversation with the defendant today, sir? Will you tell the Court.

MR. BANK: Objection.

THE COURT: Overruled. You have an exception.

THE WITNESS: *I told my lawyer —*

MR. BANK: Objection, Your Honor.·

THE COURT: Overruled.

THE WITNESS: *I told him if the weapons were returned, maybe we could make an arrangement. I am willing to do this.*

MR. BANK: *Your Honor, I move for a mistrial. This line of questioning is designed to prejudice you.*

THE COURT: If there is a statement as to the fact that he stole the guns, this is one thing and is admissible. However, if the statement merely deals with the probability of [sic] possibility that the defendant will make an adjustment or settlement to the prosecutor, then this type of statement would be inadmissible and prejudicial.

MR. BANK: *Yes, and I would move for a mistrial.*

THE COURT: *I don't have the slightest idea of what was said to Mr. Long, and what he said to the defendant.*

MR. BANK: The defendant is claiming he is innocent and *I move for a mistrial.*

MR. INGRAM: This is not correct.

BY MR. INGRAM:

Q. Did you have a conversation regarding the possession of your firearms?

A. Yes.

Q. Did the defendant tell you—

MR. BANK: Objection

THE COURT: Overruled.

BY MR. INGRAM:

Q. Did he tell you where the weapons were?

A. *He said him and my daughter sold them.*

MR. BANK: He is committing perjury, Your Honor. I am a witness here. I will take the stand. He never said that to this man.

THE COURT: *Are you saying the defendant told you that he and your daughter sold the guns and got money for them?*

THE WITNESS: *He said he and my daughter sold the guns to a guy named Pinkey.*

THE COURT: Mr. Bank, you will have to call in new counsel.

MR. BANK: He is sitting right here, but he was not sequestered.

THE COURT: You will have to call in new counsel if you are going to take the stand.

MR. BANK: Your Honor, this is highly prejudicial. I'm a witness and we wish to have private counsel.

THE COURT: The rules are very clear, and I am making the ruling on this. If a Counsel who is representing a defendant is placed in a situation where he has to be a witness, then he has to remove himself from the case because he is going to be a witness. This is—

MR. BANK: *I again move for a mistrial. I have plenty of grounds for a mistrial.* This is up to you.

THE COURT: This could not be tried in a half an hour or an hour. Mr. Bank wants his opportunity to testify. I could not let him try this case as the defendant's attorney and also testify. This cannot be done. We will have to adjourn this case and appoint private counsel.

MR. BANK: You will have to give this a continuation date, and assign somebody else as private counsel, because I'm going to take the stand.

THE COURT: Mr. Bank, I am here to try cases. Are you moving for a mistrial?

MR. INGRAM: May we hold this?

THE COURT: *I am going to grant this mistrial.* New counsel will have to be appointed because Counsel here is going to be a witness[2]

(RR. 19–24) (Emphasis added)

As can be ascertained from the aforesaid, appellant's trial attorney had intentions of taking the stand to contradict the inculpatory statements attributed to the accused by Mr. Long. Thus, *"[i]n view of the fact that the trial attorney himself was to become a witness, the Court honored the [appellant's trial attorney's] request for a mistrial."* (Emphasis added) (Lower Court Opinion at 2) The case was continued to allow appellant to obtain new counsel.

Before the second trial started, appellant filed a Motion alleging that the Commonwealth "forced" him to request a mistrial by engaging in prosecutorial misconduct (asking Mr. Long questions) intentionally calculated to provoke a mistrial. On November 4, 1981, a Rule To Show Cause was issued, which resulted in a proceeding being scheduled for January 7, 1982. On that day, appellant's counsel was going to have "the testimony ... of one witness, which would be very short. Unfortunately, he [was] not present." (N.T. 1/7/82 at 2) When asked by the court what this witness would have testified to if in court, counsel stated, "To the conversation which occurred in the courtroom that morning," and testified to by Mr. Long. *Id.* The hearing judge agreed with the Commonwealth's assessment that the facts did not indicate a case of double jeopardy and denied appellant's Motion. This appeal followed and an Opinion was filed (per Judge DiNubile, Jr., which was concurred in by Judge Hirsh) in support of the January 7, 1982 Order denying appellant's Motion.

**2.** We note that an examination of the reproduced trial transcript reveals that the trial judge made various "corrections" to the aforecited exchange. The "corrections" have been inserted into the discussion where appropriate. The "corrections" appear at the conclusion of the reproduced record, consist of four (4) pages and are dated 2/11/82. The trial judge affixed his signature to the "corrections" to verify their authenticity.

On appeal, appellant launches a two-pronged attack. The initial one avers that the prosecution engaged in misconduct by the testimony it elicited from Mr. Long, "first, because it related to settlement discussions and/or plea negotiations and, secondly and most seriously, because the testimony elicited by the prosecutor was knowingly false." (Appellant's Brief at 9) Alternatively, in the second prong, appellant seeks a remand "to prove the requisite intentional or bad faith misconduct[ ]" on the part of the Commonwealth's attorney. (Appellant's Brief at 14–15)

Prior to addressing the merits of appellant's claims, we need to determine the scope of review to be utilized instantly. To that end, our Supreme Court identified those circumstances in which the Double Jeopardy Clause will bar retrial "if the defendant sought the mistrial as a result of prosecutorial misconduct amounting to overreaching." (Citations omitted) *Commonwealth v. Starks,* 490 Pa. 336, 340, 416 A.2d 498, 500 (1980). On this subject of "prosecutorial overreaching," the Court in *Starks* stated:

> The United States Supreme Court has enunciated principally two types of prosecutorial overreaching. First there is the prosecutorial misconduct which is designed to provoke a mistrial in order to secure a second, perhaps more favorable, opportunity to convict the defendant. See *United States v. Dinitz,* [424 U.S. 600, 611, 96 S.Ct. 1075, 1081, 47 L.Ed.2d 267 (1976)]. Second there is the prosecutorial misconduct undertaken in bad faith to prejudice or harass the defendant. See *Lee v. United States,* [432 U.S. 23, 32, 97 S.Ct. 2141, 2147, 52 L.Ed.2d 80 (1977)]; *United States v. Dinitz,* supra at 611, 96 S.Ct. at 1081–82. In contrast to prosecutorial error, overreaching is not an inevitable part of the trial process and cannot be condoned. It signals the breakdown of the integrity of the judicial proceeding, and represents the type of prosecutorial tactic which the double jeopardy clause was designed to protect against.

*Id.* 490 Pa. at 341, 416 A.2d at 501.

This Court has interpreted *Starks* to hold that, *"prosecutorial* misconduct rising to the level of *overreaching* will

bar retrial only if the specified misconduct is attributable to a *bad faith* effort to prejudice the defendant *or* an *intent* to provoke a mistrial." (Emphasis added) (Footnote omitted) (Citation omitted) *Commonwealth v. Clark,* 287 Pa.Super. 380, 390, 430 A.2d 655, 660 (1981). *Accord Commonwealth v. Yost,* 305 Pa.Super. 316, 321 n. 5, 451 A.2d 549, 552 n. 5 (1982); *Commonwealth v. Anderson,* 294 Pa.Super. 1, 5–6, 439 A.2d 720, 722 (1981); *Commonwealth v. Smith,* 284 Pa.Super. 60, 67, 425 A.2d 393, 396 (1981). In fact, we have noted that *Starks* "set forth an authoritative standard for overreaching cases where none previously existed." (Citations omitted) *Commonwealth v. Clark, supra,* 287 Pa.Super. at 390 n. 9, 430 A.2d at 660 n. 9.

It is appropriate at this point in the discussion to mention that the United States Supreme Court recently found it necessary to delineate more fully than it had the bounds of the "narrow exception to the rule that the Double Jeopardy Clause is no bar to retrial." *Oregon v. Kennedy,* 456 U.S. 667, 673, 102 S.Ct. 2083, 2088, 72 L.Ed.2d 416 (1982). Justice Rehnquist, writing for the majority,[3] recognized that language taken from the Court's earlier opinions "would seem to broaden the test [for determining a violation of the Double Jeopardy Clause] from one of *intent* to provoke a motion for a mistrial to a more generalized standard of 'bad faith conduct' or 'harassment' on the part of the judge or prosecutor." (Emphasis in original) *Id.* at 674, 102 S.Ct. at 2089 ("earlier opinions" referred to by the Court consisted of *United States v. Dinitz, supra,* and *United States v. Jorn,* 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971)). The Court in *Oregon* further conceded that:

> Because of the confusion which these varying statements of the standard in question [—garnered from the decisions in *United States v. Dinitz, supra,* and *United*

---

**3.** Justice Rehnquist's lead opinion was joined by Burger, C.J., White and O'Connor, JJ., with Justice Powell noting in his concurring opinion that he also "join[ed] the Court's opinion holding that the *intention* of a prosecutor determines whether his conduct, viewed by the defendant and the court as justifying a mistrial, bars a retrial of the defendant under the Double Jeopardy Clause." (Emphasis in original) *Id.* 456 U.S. at 679, 102 S.Ct. at 2091–2092.

*States v. Jorn, supra*—] have occasioned in other courts, we deem it best to acknowledge the confusion and its justifiability in the light of these statements from previous decisions. We do not by this opinion lay down a flat rule that where a defendant in a criminal trial successfully moves for a mistrial, he may not thereafter invoke the bar of double jeopardy against a second trial. But *we do hold that the circumstances under which such a defendant may invoke the bar of double jeopardy in a second effort to try him are limited to those cases in which the conduct giving rise to the successful motion for a mistrial was intended to provoke the defendant into moving for a mistrial.* (Emphasis added)

*Id.* at 679, 102 S.Ct. at 2091.

Albeit the Court admitted that a standard which examines the *intent* of the prosecutor, *vis-a-vis* "bad faith conduct" or "harassment" on the part of the judge or prosecutor, is not entirely free from practical difficulties, it, nonetheless, felt such was "a manageable standard to apply. It merely calls for the court to make a finding of fact. [That is, i]nferring the existence or nonexistence of intent from objective facts and circumstances[.]" *Id.* at 675, 102 S.Ct. at 2089.

Our reason for embarking on an examination of the *Oregon* decision is the Commonwealth's contention that appellant's reliance upon *Commonwealth v. Starks, supra* (where our Supreme Court held that a retrial is barred if there is *either intentional misconduct or bad faith overreaching on the part of the prosecutor*), is no longer tenable. It is the Commonwealth's position that, in light of the holding in *Oregon* (i.e., retrial is barred *only* when there exists prosecutorial misconduct which is *intended* to provoke a mistrial), "the rule set down in *Starks* is not the law." (Commonwealth's Brief at 3)

We observe that to date the Supreme Court of Pennsylvania has given neither a more restrictive nor more expansive interpretation to Pennsylvania's Double Jeopardy Clause (Art. 1, § 10) than that given the Fifth Amendment by the

United States Supreme Court.[4] *See, e.g., Commonwealth v. Klobuchir*, 486 Pa. 241, 405 A.2d 881 (1979) (Nix, J., Opinion in Support of Affirmance joined by O'Brien and Larsen, JJ.), *cert. denied*, 445 U.S. 952, 100 S.Ct. 1602, 63 L.Ed.2d 787, *reh. denied*, 446 U.S. 947, 100 S.Ct. 2178, 64 L.Ed.2d 804 (1980); *Commonwealth v. Perry*, 270 Pa.Super. 412, 411 A.2d 786 (1979). Stated differently, " '[i]n light of the textual and policy similarities between the Pennsylvania and United States constitutional [double jeopardy] provisions' [our Supreme Court] ha[s] concluded that since *Benton v. Maryland*, [395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969) ], the Pennsylvania clause must be interpreted as being at least co-extensive with its federal counterpart." (Citation omitted) *Commonwealth v. Hude*, 492 Pa. 600, 613, 425 A.2d 313, 320 (1980); *see also Commonwealth v. Boerner*, 281 Pa.Super. 505, 422 A.2d 583 (1980).

Nonetheless, granted that the double jeopardy protection provided under the Fifth Amendment has been made applicable to the states, *Benton v. Maryland, supra*, this "does not necessarily deter a state from providing in its constitution an enhanced protection for its citizen...." (Citations omitted) *Commonwealth v. Hogan*, 482 Pa. 333, 342, 393 A.2d 1133, 1137 (1978); *cf. Commonwealth v. Henderson*, 496 Pa. 349, 437 A.2d 387 (1981) (United States Supreme Court's interpretation of federal constitution did not and could not disturb force of Pennsylvania's interested-adult rule); *Reese v. Danforth*, 486 Pa. 479, 406 A.2d 735 (1979) (Precedents drawn from federal common law would not be followed in this Commonwealth concerning official immunity for a public defender); *Commonwealth v. Bussey*, 486

---

**4.** However, in *Commonwealth v. Bolden*, 472 Pa. 602, 373 A.2d 90 (1977), the Court held that an accused would be afforded the protection against reprosecution after a mistrial was granted at his request if he proved intentional or *grossly negligent* misconduct on the part of the prosecution or judge. *See Commonwealth v. Perry*, 270 Pa.Super. 412, 411 A.2d 786 (1979). This expansive interpretation of the standard to be utilized in double jeopardy cases has since been repudiated. *See Commonwealth v. Klobuchir*, 486 Pa. 241, 405 A.2d 881 (1979), *cert. denied*, 445 U.S. 952, 100 S.Ct. 1602, 63 L.Ed.2d 787, *reh. denied*, 446 U.S. 947, 100 S.Ct. 2178, 64 L.Ed.2d 804 (1980).

Pa. 221, 404 A.2d 1309 (1979) (Court declined to follow *North Carolina v. Butler*, 441 U.S. 369, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979) and held, according to the Supreme Court's supervisory powers and its interpretation of the Pennsylvania Constitution, an explicit waiver of one's *Miranda* rights is a mandatory requirement before any statement will be considered voluntarily, knowingly and intelligently given); *Commonwealth v. Kauffman*, 258 Pa.Super. 183, 392 A.2d 745 (1978) (Pennsylvania Supreme Court has the right, in the exercise of its supervisory authority, to set higher standards for Pennsylvania than that enunciated by the United States Supreme Court to protect its citizenry). However, such has not been evidenced from our review of the case law interpreting Pennsylvania's Double Jeopardy Clause. *See* note 4, *supra*. This is borne out by the decisional law of this jurisdiction, which, as it has evolved with respect to mistrials, has adhered consistently to the standard of review promulgated by the United States Supreme Court. *See, e.g., Commonwealth v. Sample*, 493 Pa. 347, 426 A.2d 582 (1981); *Commonwealth v. Washington*, 492 Pa. 572, 424 A.2d 1340 (1981); *Commonwealth v. Mitchell*, 488 Pa. 75, 410 A.2d 1232 (1980); *Commonwealth v. Starks, supra; Commonwealth v. Yost, supra; Commonwealth v. Anderson, supra; Commonwealth v. Clark, supra; Commonwealth v. Simms*, 284 Pa.Super. 528, 426 A.2d 620 (1981). Thus, the two principal types of prosecutorial overreaching looked to in deciding if a mistrial precludes reprosecution are: 1) prosecutorial misconduct *intentionally* calculated to trigger the declaration of a mistrial; and 2) prosecutorial misconduct undertaken in *bad faith* to harass the accused. *See Commonwealth v. Virtu*, 495 Pa. 59, 65 n. 7, 432 A.2d 198, 201 n. 7 (1981).

A comment on the continuing viability of the dual mistrial test appeared in *Commonwealth v. Wallace*, 500 Pa. 270, 455 A.2d 1187 (1983), a case dealing with an accused's request for a new trial. Justice Nix, in his Concurring Opinion, observed that *Oregon v. Kennedy, supra,* had *disavowed* the "prosecutorial overreaching" standard as an

exception to the "manifest necessity" exception barring a retrial over a defendant's objection to the initial mistrial.[5] Likewise, this Court, in *Commonwealth v. Arelt*, 308 Pa. Super. 236, 454 A.2d 108 (1982), held that withdrawal of appellant's guilty plea did not foreclose reprosecution under a theory of double jeopardy, inasmuch as there was no proof of *intent* that the prosecution desired the accused to take such an action; and it did so citing *Oregon v. Kennedy, supra.*

We find that the dual standard of ("intent" or "bad faith") review first articulated with any degree of clarity in *Commonwealth v. Starks, supra*, being premised upon federal case law that has been subsequently "clarified" (to one of "intent" only), is rendered somewhat suspect by *Oregon v. Kennedy, supra. See generally Commonwealth v. Wallace, supra* (Justice Nix's Concurring Opinion); *Commonwealth v. Arelt, supra.*

 This jurisdiction's double jeopardy rulings dealing with prosecutorial misconduct, albeit ostensibly scrutinized under the federal and Pennsylvania constitutions,[6] turn on the standard of review enunciated by the United States Supreme Court. This approach is consistent with the view expressed by this Court that we will follow such decisions even though they are in conflict with the law as determined by our own appellate courts. *See Commonwealth ex rel. Goodfellow v. Rundle*, 203 Pa.Super. 419, 435, 201 A.2d

---

**5.** The Majority Opinion in *Wallace* is not otherwise illuminating since a new trial was awarded on the basis that the prosecution failed to comply with *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

**6.** *See Commonwealth v. Sample,* 493 Pa. 347, 426 A.2d 582 (1981) (Alleged violations of the double jeopardy clauses of both the United States and Pennsylvania Constitutions were evaluated under the federal standard set forth in *Starks*); *Commonwealth v. Washington,* 492 Pa. 572, 424 A.2d 1340 (1981); *Commonwealth v. Mitchell,* 488 Pa. 75, 410 A.2d 1232 (1980); *see also Commonwealth v. Boerner,* 281 Pa.Super. 505, 515–16 n. 11, 422 A.2d 583, 588 n. 11 (1980), where it is mentioned that our Supreme Court evidently treats a simple claim of "double jeopardy" as sufficient to raise both the federal and state claims.

615, 623 (1964). Notwithstanding such a predisposition, we find it appropriate, under the particular circumstances here, to apply the pre-*Oregon* standard of review in assessing appellant's claims. *August v. Stasak*, 492 Pa. 550, 424 A.2d 1328 (1981) (Retroactive application is a matter of judicial discretion which must be exercised on a case by case basis). The reasons for adopting a non-retroactive application of *Oregon* to the case *sub judice* are:

First, the decision in *Oregon* resulted in a "rule" being "adopted," *id.* 456 U.S. at 678 n. 8, 102 S.Ct. at 2091 n. 8; *Commonwealth v. Wallace, supra* (Justice Nix's Concurring Opinion), that narrowed the prior standard of review applicable to mistrials, i.e., overruled cases holding to the contrary.

Second, because the purpose and effect of the present ("intent" only) rule of review is consistent with the pre-*Oregon* ("intent" or "bad faith") standard, we do not find that its operation will be retarded if not applied retroactively.

Third, appellant's appeal having been perfected prior to the *Oregon* decision, we think, in weighing the equities, that "injustice or hardship" will be avoided by non-retroactivity, i.e., the accused will have the benefit of having his claims scrutinized under the broader standard.[7]

Based on the preceding, *see Linkletter v. Walker*, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965), we deem it appropriate to evaluate appellant's prosecutorial overreaching claims against a standard allowing a bar to retrial where "intentional" or "bad faith" misconduct was engaged in by the prosecution.

---

7. In this Commonwealth, at least in some cases, the decisions that have been retroactively applied have resulted in "benefiting" the appellant. *See, e.g., Commonwealth v. Hernandez,* 498 Pa. 405, 446 A.2d 1268 (1982) (McCutchen rule); *Commonwealth v. Brown,* 494 Pa. 380, 431 A.2d 905 (1981) (Insanity instruction); *August v. Stasak,* 492 Pa. 550, 424 A.2d 1328 (1981) (Notice of insurance loss); *In Re: Adoption of M.E.T.,* 313 Pa.Super. 316, 459 A.2d 1247 (1983) (Clear and convincing standard in adoption proceedings). This would not be the case here if we were to apply *Oregon v. Kennedy, supra,* retroactively.

■ Turning to the facts, we see that the first portion of Mr. Long's testimony complained of by the appellant concerns an accounting in which the witness stated he told his attorney, during a recess in the presence of the appellant and his counsel, that "if the weapons were returned, maybe [the parties involved] could make an arrangement. [He was] willing to do this." (RR. 21) Appellant's counsel moved for a mistrial at the completion of this statement, but the trial court took no action on the motion since it "d[idn't] have the slightest idea of what was said to Mr. Long, and what he said to the [appellant]." *Id.* Suffice it to say, we do not equate the aforesaid with the placement of such highly prejudicial information before the trier of fact that the only recourse would have been the declaration of a mistrial. In other words, the evidence was not so prejudicial that we cannot assume that the trier of fact would have been unable to put it aside and arrive at an impartial adjudication. *Compare Commonwealth v. Conti,* 236 Pa.Super. 488, 345 A.2d 238 (1975). Moreover, because a mistrial was declared, appellant was granted the relief he sought, but the actions of the Commonwealth, based on our review of the applicable case law, come nowhere near the level of prosecutorial misconduct held to bar a retrial.[8] *See, e.g., Commonwealth v. Virtu, supra; Commonwealth v. Anderson, supra; Commonwealth v. Clark, supra; see also Commonwealth v. Miele,* 300 Pa.Super. 197, 446 A.2d 298 (1982).

The last of appellant's complaints centers upon the prosecution's query to Mr. Long as to whether appellant had told him "where the weapons were?" To which Mr. Long responded, "He said him and my daughter sold them." (RR.

---

**8.** Having concluded that Mr. Long's testimony did not necessitate the granting of a mistrial nor warrant the barring of a second trial, we do not reach appellant's contention that Mr. Long's testimony was prejudicial in that it could be inferred therefrom that an offer to make an arrangement ("compromise") was made. On this subject *see, e.g., Commonwealth v. Melnyczenko,* 238 Pa.Super. 203, 358 A.2d 98 (1976); *Commonwealth v. Luciano,* 205 Pa.Super. 397, 208 A.2d 881 (1965); *Commonwealth v. Cohen,* 133 Pa.Super. 437, 2 A.2d 560 (1938); Wharton's Criminal Evidence, § 706 (13th Ed.1973).

22) No motion was made at this time for a mistrial. Rather, appellant's counsel accused Mr. Long of committing perjury, and, to prove his point, he was going to take the stand to refute the testimony. Immediately thereafter, as though to clarify the matter, the trial court inquired of Mr. Long if he was saying that the appellant had told him that the appellant and Mr. Long's daughter had sold the guns and secured money for them? Mr. Long replied, "He said he and my daughter sold the guns to a guy named Pinkey." *Id.* No motion for a mistrial was made at this juncture either. However, the trial court advised appellant's attorney (Mr. Bank) that if he intended to testify he would have to, first, "remove himself from the case[.]" (RR. 23) Curiously enough, *only at this juncture of the litigation* did counsel "move for a mistrial." *Id.* Because the matter could not be expeditiously disposed of, the trial court refused to let Mr. Bank "try th[e] case as the defendant's attorney and also testify." *Id.* Thus, the court thought it best "to adjourn" to allow new counsel to be obtained. Mr. Bank, however, wanted "a continuation date" to accomplish all that was needed. Accordingly, the trial court *accommodated* Mr. Bank and granted a mistrial *so new counsel could be secured.* (RR. 24)

 From the preceding, it is obvious that the mistrial was sought, and granted, not because of Mr. Long's testimony attributing appellant with admitting to the possession and sale of the guns,[9] but to afford counsel for appellant

9. Appellant's appellate counsel does not allege that trial counsel was ineffective for failing to state specifically that the mistrial was being sought because of Mr. Long's testimony attributing appellant with the commission of the offenses charged, in contrast to seeking time to secure new counsel so that trial counsel could testify. Thus, such a *theory* having not been raised below, it is waived for appellate purposes. *See Commonwealth v. Williams,* 476 Pa. 557, 383 A.2d 503 (1978); *Commonwealth v. Polof,* 283 Pa.Super. 565, 362 A.2d 427 (1976); 2 Henry on Pennsylvania Evidence, § 724 (1953); Kleiner, Jack & Rome, Edwin P., Trial Handbook for Pennsylvania Lawyers, § 402 (1980). This position is buttressed by the fact that the lower court's opinion treats the basis for the mistrial motion as one consisting of trial counsel's wish to testify as a witness on behalf of the

the opportunity to testify. Since there was a period of time (during a trial recess) when the alleged statements may have been made where only the prosecution, Mr. Long, Mr. Bank and appellant were in attendance, the defense determined that it was necessary for trial counsel to testify as to his recollection of the event. Towards that end, the trial court decided, and rightly so, to declare a mistrial.

On the topic of counsel testifying as a witness and still remaining on the case,[10] the courts of this Commonwealth have stated:

> defense to rebut Mr. Long's version of what transpired during the court recess.
>
> Even if we were to hold that there was no waiver, an accused's "admission" is relevant and material, and thus, is the proper subject of review by the trier of fact. *See Commonwealth v. Sherard,* 456 Pa. 505, 321 A.2d 372 (1974); *Commonwealth v. Staino,* 204 Pa.Super. 319, 204 A.2d 664 (1964); 1 Henry on Pennsylvania Evidence, § 75 (1953) ("... once properly proved, voluntary admissions against interest are of the highest kind of evidence and are entitled to great weight, it being fair to presume that a party would not say anything against his own interest unless it be true." (Footnote omitted)).

**10.** The possible inconsistency of the role of an advocate and a witness has occasioned rules of professional responsibility governing when counsel may participate as a witness. E.g., Disciplinary Rules 5–101 and 5–102 of the Code of Professional Responsibility provide in pertinent part as follows:

DR 5–101 Refusing Employment When the Interests of the Lawyer May Impair His Independent Professional Judgment.

* * * * * *

(b) A lawyer shall not accept employment in contemplated or pending litigation if he knows or it is obvious that he or a lawyer in his firm ought to be called as a witness, except that he may undertake the employment and he or a lawyer in his firm may testify:

(1) If the testimony will relate solely to an uncontested matter.

(2) If the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony.

(3) If the testimony will relate solely to the nature and value of legal services rendered in the case by the lawyer or his firm to the client.

(4) As to any matter, if refusal would work a substantial hardship on the client because of the distinctive value of the lawyer or his firm as counsel in the particular case.

DR 5–102 Withdrawal as Counsel When the Lawyer Becomes a Witness.

Unquestionably, the participation of counsel as a witness in the trial is to be discouraged. There are a number of concerns that arise where counsel becomes involved in the trial as a witness. It has been suggested that once he becomes a witness his personal credibility is placed at issue before the [trier of fact] and this may lessen his effectiveness as an advocate. Code of Professional Responsibility EC 5–9 (1980); *Miller Electric Const., Inc. [v.] Devine Lighting Co.,* 421 F.Supp. 1020, 1021 n. 3 (W.D.Pa.1976); *Commonwealth v. Rondeau,* 79 Mass. 1668, 392 N.E.2d 1001, 1005 (1979). It has also been indicated that his involvement as a witness for his client causes him to be more easily subject to impeachment for interest and thus lessens his effectiveness as a witness. *Id.* On the other hand, his participation as a witness may cause his client's side to gain an unfair advantage, because of opposing counsel's reluctance to aggressively attack his credibility. *Id.* (Footnote omitted)

*Commonwealth v. Floyd,* 494 Pa. 537, 546–47, 431 A.2d 984, 989–990 (1981).

The procedure followed instantly, once counsel's participation became apparent, was proper. To start with, there was no indication of whether counsel was to be the last witness to testify, or that the securement of new counsel could be accomplished within a half hour or an hour (RR. 23), so that the case could proceed without further interruption to its conclusion. Also, the subject matter of appellant's counsel's testimony, having arisen at a rather propi-

(A) If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client, he shall withdraw from the conduct of the trial and his firm, if any, shall not continue representation in the trial, except that he may continue the representation and he or a lawyer in his firm may testify in the circumstances enumerated in DR 5–101(B)(1) through (4).

(B) If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm may be called as a witness other than on behalf of his client, he may continue the representation until it is apparent that his testimony is or may be prejudicial to his client.

tious moment, was directed to a relevant issue and did go to the heart of the case. Lastly, under the circumstances just recounted, the acceptance or rejection of counsel's testimony by the trier of fact was critical to the decision to be reached in the matter. *Cf. Commonwealth v. Charleston,* 251 Pa.Super. 311, 317, 380 A.2d 795, 798 (1977) (" '[A] witness to corroborate appellant's alibi would have been the single most important possible addition to appellant's defense.' " (Citation omitted)). "Under these circumstances, the decision [not] to continue with the trial and to [grant] the requested motion for a mistrial was clearly reasonable." *Commonwealth v. Floyd, supra,* 494 Pa. at 549, 431 A.2d at 991.

■ At the evidentiary hearing scheduled to rule on appellant's motion to dismiss, the sole witness new counsel proposed to have testify was "not present[,]" (N.T. 1/7/82 at 2), despite the passage of some ninety (90) days since the original trial. Thereafter, the hearing judge denied the Motion when informed by counsel that if the witness were present he would have testified, "To the conversation which occurred in the courtroom that morning, which was later testified to, or attempted to be testified to, by the complaining witness in this matter, Mr. Long." *Id.*

Aside from the fact that counsel neglected to seek a continuance so that the witness could be produced (*see* Pa.R.Crim.P. 301), we agree with the observations made by the Commonwealth that, "What defendant wanted [the hearing judge] to do was to make a pre-trial ruling on the credibility of a witness' testimony. Such a credibility determination is within the province of a trier of fact [in a trial setting, as it applied to the case here], not the pre-trial motions court." (Commonwealth's Brief at 5–6) This dispenses with appellant's request for a remand. Appellant will have ample opportunity at retrial to present his version, either through the testimony of Mr. Bank or, if he wishes, by taking the stand himself, to refute Mr. Long's testimony.

For the foregoing reasons, we find from our review of the entire record neither "intentional" nor "bad faith" misconduct rising to the level of "prosecutorial overreaching" entitling appellant to the relief requested.

Order affirmed.

JOHNSON, J. files a concurring statement.

JOHNSON, Judge, concurring:

I share the majority's view that the mistrial was not the product of prosecutorial misconduct as that term is defined in *Commonwealth v. Starks*, 490 Pa. 336, 416 A.2d 498 (1980), but instead was necessitated by defense counsel's desire to testify and hence the need to continue the case for the appointment of new counsel. I further agree that the alternative claim of the appellant, that he is entitled to a remand for a new hearing, is meritless on the facts of this case.

Since I agree that appellant should have the benefit of our review of his claim applying the *Starks* standard, and that *Oregon v. Kennedy*, 456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982) should not be applied retroactively by this court, I believe it inappropriate to further discuss any possible ramifications resulting from the future interpretation of *Oregon v. Kennedy* in this Commonwealth. I therefore am unable to join in that portion of the majority opinion at pp. 95–104. On a similar note, I would prefer to refrain from analyzing trial counsel's stewardship and believe that the exchange at issue between the trial court and counsel might be better evaluated as an aggregate, rather than seeking to evaluate portions of the exchange separately.

For these reasons, I concur in the result.