479 A.2d 522

**COMMONWEALTH of Pennsylvania**

v.

**Robert LARK, Appellant.**

Superior Court of Pennsylvania.

Argued Dec. 9, 1983.

Filed June 15, 1984.

---

1. Nothing can be created out of nothing. [Lucretius: *De rerum natura I*]

226

Timothy J. Savage, Philadelphia, for appellant.

Steven J. Cooperstein, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before CAVANAUGH, BROSKY and POPOVICH, JJ.

CAVANAUGH, Judge:

▇ This is an interlocutory appeal[1] by the appellant, Robert Lark, from the lower court's order denying his Motion to Dismiss the Bills of Information on Double Jeopardy Grounds.[2] We affirm.

An examination of the record reveals the following. At a jury trial before the Honorable Theodore B. Smith, Jr., the Commonwealth presented its case against the appellant on charges of murder,[3] possessing instruments of crime,[4] pro-

---

**1.** The appeal from the Order denying appellant's Motion to Dismiss is as an interlocutory appeal as of right pursuant to Pa. R.A.P. 311(a)(5).

**2.** The denial of a pretrial application to dismiss an information on the ground that the retrial will violate the defendant's right not to be placed in double jeopardy may be appealed before the retrial is held. *Commonwealth v. Bolden*, 472 Pa. 602, 373 A.2d 90 (1977); *Commonwealth v. Ross*, 295 Pa.Super. 409, 441 A.2d 1298 (1982); U.S. Const. Amend. 5, Amend. 14; Pa. Const. Art. I, § 10.

**3.** 18 Pa.C.S. § 2502.

**4.** 18 Pa.C.S. § 907.

hibited offensive weapons,[5] and terroristic threats.[6]

One of the Commonwealth's witnesses, policeman Barry Wilson, was called to testify by the Commonwealth, upon the judge's request. The prosecutor diligently attempted to alert Judge Smith to potential problems in calling Wilson at that time, and requested a discussion at sidebar with the court to explain these problems, but the request was refused. The circumstances under which Wilson was called as a witness is described in the following excerpt from the trial record.

THE COURT: Have you another witness, short witness?

MR. CAMPOLONGO: I don't think that our next one will be all that short, sir. So it may be—

THE COURT: Well, don't you have any witness we can use fifteen minutes because we did not give this jury the opportunity to work?

MR. CAMPOLONGO: I know, sir.

THE COURT: Is there any witness that you have just of any short duration? We can interrupt. Bring the next witness in. Next witness.

MR. CAMPOLONGO: May I see your Honor at side bar.

THE COURT: No. Call your next witness.

MR. CAMPOLONGO: There may be a problem, sir. The next witness—

THE COURT: There may be a problem? Call the next witness. We'll iron out the problem.

MR. CAMPOLONGO: Very well, your Honor.

Policeman Barry Wilson.

I believe this witness will be out of turn, sir. I must tell your Honor—

THE COURT: That doesn't matter.

MR. CAMPOLONGO: Very well, sir.

THE COURT: Lawyers may call witnesses in or out of turn as you well know.

5. 18 Pa.C.S. § 908.

6. 18 Pa.C.S. § 2706.

The assistant district attorney began questioning Wilson about his official duties as a member of the police stakeout unit. Thereafter, the prosecutor narrowed his line of questioning to Wilson's specific duties on the date of appellant's arrest, January 9, 1980. While the prosecutor was in the midst of this line of questioning, Judge Smith interjected himself into the inquiry and conducted the following colloquy with the witness.

BY MR. CAMPOLONGO: [Assistant District Attorney]
Q. Well, how did you happen to be in that area? Why were you detailed to that area of the electric company in North Philadelphia?

MR. SAVAGE: Objection.

THE COURT: Where was this electric company in North Philadelphia?

THE WITNESS: This was at Broad and Tioga.

THE COURT: Broad and Tioga?

THE WITNESS: Yes, sir.

THE COURT: Why were you there?

THE WITNESS: Our superiors had received information from—

THE COURT: Well, never mind what the information is. As a result of the information, why were you there?

THE WITNESS: We were there anticipating a holdup.

THE COURT: I see.

MR. SAVAGE: Objection, sir, and my motion.

THE COURT: I'll sustain the objection. I expected the answer to be Robert Lark. That's what he said initially. (Underscoring added).

The trial court then gave the jury instructions to disregard the last comment of the witness, Policeman Wilson. A recess was called, whereupon defense counsel, out of the jury's presence, moved for a mistrial on the basis that the *prosecution* asked a question which he knew would elicit an answer prejudicial to appellant, and which could have been avoided. Judge Smith found the risk of prejudice flowing from the witness's disclosure to be too great to be cured by

the cautionary instruction to the jury, which he had given *sua sponte.* That is, the sum of Wilson's testimony was that he was executing a stakeout because the police had reason to believe appellant was about to commit an offense, i.e., robbery, other than those for which he was standing trial. Therefore, the motion for mistrial was granted.

Appellant argues that retrial will violate the double jeopardy clause because there was requisite prosecutorial misconduct so as to bar retrial, and, therefore, appeals from the order denying his Motion to Dismiss. In support of his motion for dismissal, appellant contends that the prejudice caused by Wilson's testimony was deliberately provoked by the Commonwealth's attorney either (1) to invite mistrial of a weak case and obtain a more favorable opportunity to prosecute successfully on a later occasion, or, (2) in bad faith to harass and prejudice the defendant in the eyes of the jury.

 The lower court opinion correctly set forth the proper authority by which the present motion is governed.[7]

---

7. The Commonwealth asserts that the appropriate standard for determining prosecutorial misconduct in this case is that announced in *Oregon v. Kennedy,* 456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982). That case definitively states that the "circumstances under which such a defendant [a criminal defendant who successfully moves for a mistrial] may invoke the bar of double jeopardy in a second attempt to try him are limited to those cases in which the conduct giving rise to the successful motion for a mistrial was *intended* to provoke the defendant into moving for a mistrial." Thus, *Oregon v. Kennedy, supra,* effectively strikes one of the two grounds under *Commonwealth v. Starks,* 490 Pa. 336, 416 A.2d 498 (1980), upon which a defendant may assert prosecutorial misconduct. That is, after *Oregon v. Kennedy,* an allegation of prosecutorial misconduct predicated on the ground of conduct undertaken in bad faith to prejudice or harass the defendant, absent a showing of intent to provoke a mistrial by the prosecutor, is deficient.

The order denying appellant's application to dismiss was handed down on March 30, 1982. The appeal of that order was perfected on April 2, 1982; *Oregon v. Kennedy* was decided on May 24, 1982. The determination of whether a new constitutional rule should be applied retroactively is a matter of judicial discretion, *August v. Stasak,* 492 Pa. 550, 424 A.2d 1328 (1981). Our court has decided to apply *Oregon v. Kennedy, supra,* prospectively. *See Commonwealth v. Riffert,* 322 Pa.Super. 230, 469 A.2d 267 (1983); *Commonwealth v. Beaver,* 317 Pa.Super. 88, 463 A.2d 1097 (1983); *Commonwealth v. Arelt,* 308

In *Commonwealth v. Starks,* 490 Pa. 336, 416 A.2d 498 (1980), the Supreme Court of Pennsylvania said,

The United States Supreme Court has enunciated principally two types of prosecutorial overreaching. First, there is the prosecutorial misconduct which is designed to provoke a mistrial in order to secure a second, perhaps more favorable, opportunity to convict the defendant. See *United States v. Dinitz,* supra [424 U.S. 600] at 611, 96 S.Ct. [96 S.Ct. 1075] at 1081 [47 L.Ed.2d 267 (1976)]. Second there is the prosecutorial misconduct undertaken in bad faith to prejudice or harass the defendant. See *Lee v. United States,* supra [432 U.S. 23] at 32, 97 S.Ct. [2141] at 2147 [52 L.Ed.2d 80 (1977)]; *United States v. Dinitz,* supra at 611, 96 S.Ct. at 1081–82. In contrast to prosecutorial error, overreaching is not an inevitable part of the trial process and cannot be condoned. It signals the breakdown of the integrity of the judicial proceeding, and represents the type of prosecutorial tactic which the double jeopardy clause was designed to protect against.

*Id.,* 490 Pa. at 341, 416 A.2d at 500.

■ Appellant attempts to show prosecutorial misconduct on both of the grounds enunciated in *Commonwealth v. Starks, supra.* He does so by arguing that Judge Smith's questions were the logical outgrowth of the prosecutor's earlier line of questioning, which the prosecutor knew would inevitably lead to objectionable testimony. Thus, the contention is that the prosecutor "set the stage" for the

Pa.Super. 236, 454 A.2d 108 (1982); *Commonwealth v. Wallace,* 500 Pa. 270, 455 A.2d 1187 (1983); *Commonwealth v. Freedman,* 317 Pa.Super. 207, 463 A.2d 1158 (1983). However, we do not know whether our Supreme Court will retain *Commonwealth v. Starks, supra,* as the applicable standard in Pennsylvania. In a case factually similar to the one at bar, *Commonwealth v. Beaver, supra,* this court held that *Oregon v. Kennedy* is not applicable and is not retrospective where the appeal was perfected prior to the *Oregon v. Kennedy* decision and the motion was decided under the pre-*Oregon v. Kennedy* standard. In light of *Commonwealth v. Beaver, supra,* it is evident that the court below used the proper pre-*Oregon v. Kennedy* standard in considering prosecutorial misconduct. However, even if the *Oregon v. Kennedy* standard were applied, appellant's contention would be meritless for the reasons set forth in this opinion.

court's inquiry, and, therefore, he must accept the responsibility for the question and answer which caused the mistrial. However, appellant does not show how the intent to provoke a mistrial can be imputed to the district attorney, vis-a-vis Judge Smith's question and answer. The relevant portion of the prosecutor's earlier questioning that allegedly "set the stage" appears in the record as follows:

Q. [Assistant District Attorney] What assignment did you receive?

A. [Policeman Wilson] I was assigned—

MR. SAVAGE: Objection.

THE COURT: What's your objection?

MR. SAVAGE: It's irrelevant as to what his testimony is in this case.

THE COURT: I don't know whether it's relevant or not. You may renew your objection if it turns out to be and take the proper step. You are overruled. You may answer.

THE WITNESS: We were—had a plainclothes assignment that day in regards to Mr. Robert Lark.

Appellant disregards the fact that the prosecutor's original question, "What assignment did you receive?", did not elicit the objectionable response that was obtained by Judge Smith's question. There is no question that the witness was called to give relevant and admissible evidence as to the apprehension of Lark. Defense counsel did object to the question originally asked by the prosecutor, but the basis for that objection was that it was irrelevant, which objection was overruled. Logically, it would be reasonable for defense counsel, the prosecutor, and Judge Smith to expect the same answer, not a different one, where a question was rephrased at a later point in questioning the same witness. Therefore, we find that appellant's contention that Judge Smith's question was imputable to the assistant district attorney is wholly meritless. To extrapolate further, as appellant does, and contend that not only was Judge Smith's question imputable to the prosecutor, but that it was asked in order to invite a mistrial of a weak

case or, in bad faith to harass or prejudice the defendant, is equally meritless. *See Commonwealth v. Mitchell,* 488 Pa. 75, 84, 410 A.2d 1232, 1237 (1980) (court rejected claim that prosecutor's legitimate question was a ploy to elicit inadmissible and prejudicial testimony).

■ Furthermore, appellant's contention that the prosecutor deliberately provoked a mistrial of a weak case in order to obtain a more favorable opportunity to prosecute on a later occasion is not supported by the record. The evidence simply does not support an inference that the Commonwealth would desire to invoke a mistrial because its case was weak. *See Commonwealth v. Clark,* 287 Pa.Super. 380, 430 A.2d 655 (1981). The Commonwealth was prepared to call two witnesses to testify that appellant admitted to each of them that he murdered the robbery victim, Tae Bong Cho, who was the principal witness against him in a robbery charge. There was additional evidence that appellant had been convicted in absentia (after breaching a condition of bail) of the robbery of Cho. Additionally, the trial court opined that the evidence was circumstantially sufficient "to establish a design by defendant to defeat the earlier charge [robbery] against him by any means, and to obstruct justice even if by physical violence." Lower court opinion at 3. Even considering appellant's challenge to the credibility of the two witnesses, the lower court concluded that in view of all the evidence, the questionable credibility would not be nearly so "fatal a weakness as to prompt the Commonwealth's deliberately seeking to have its case aborted." *Id.* at 4. After careful examination of the record, we find no error in the lower court's conclusion.

Appellant also argues that evidence of the prosecutor's past conduct directed toward the appellant was relevant to demonstrate his bad faith motivation. However, since we find no basis for double jeopardy as alleged, any past conduct of the prosecutor toward this appellant is irrelevant.

Order affirmed.